SARTIN, Plaintiff in Error, *vs.* SALING, Defendant in Error.

21  387
88a 620

1. Evidence that the defendant advised a party, who either held or had disposed of a horse bought in good faith from a person having no title, not to make restitution upon demand, until he had inquired further into the matter, will not warrant an instruction based upon the hypothesis of his assenting to a continuance of the detention.

### *Error to Moniteau Circuit Court.*

This was an action begun by Sartin against John Saling and Henry, his son, who was a minor, to recover the value of a mare, alleged in the petition to have been " seized, carried away and disposed of by the defendants to their own use."

At the trial, the plaintiff offered evidence tending to show that, being the owner of the mare, he sold her to one Scott, who was living with him, upon condition that no title should pass until Scott cleared certain land, which he failed to clear; that, by his permission, Scott took the mare to go to the town of California, and there sold her, and that afterwards she was seen in the possession of Henry Saling; that, upon demand made by plaintiff for the mare, Henry said he had traded her

Sartin *v.* Saling.

off, but rather than have any difficulty "would give her up;" and that his father, who was present, then said he believed Scott owned the mare when he sold her, and advised Henry not to give her up "until he had inquired further into the matter."

The evidence of the defendants tended to show that the sale of the mare to Scott was unconditional, and that she passed from him through two or three intermediate purchasers to the defendant, Henry, who traded for her.

Upon this evidence, the Circuit Court gave the following instruction for the plaintiff, numbered as the second :

"Although John Saling may not have traded for the mare, yet, if Henry Saling did, and John, the father of Henry, encouraged him to keep her, or trade her off, or not give her up, he is equally liable with Henry Saling."

There was a verdict for the plaintiff. During the pendency of a motion for a new trial, the suit was dismissed as to Henry Saling. John Saling afterwards sued out this writ of error.

*Parsons*, for plaintiff in error. John Saling's advice to his son cannot make him liable as a co-trespasser, either in the caption or detention of the mare. (11 Phill. Ev. 187.)

*Gardenhire*, for defendant in error. Every one who advises or countenances the commission of a tort *before* it is done, is liable, although it is not done for his benefit; and so if he advise or countenance its continuance. It is only when the approval is not until *after* it is done, that it is necessary to show it was for his benefit. (1 Chitt. Pl. 67. 11 Barb. Sup. Ct. Rep. 642. 7 Mo. Rep. 175. 10 Wend. 110. 8 Pick. 333. 2 Litt. 240. 5 Ohio, 231.) In this case, the jury found that Henry Saling had not parted with the mare when demand was made, as under another instruction given, this finding was necessary to the verdict; so that John Saling advised a *continuance* of the trespass, and it was not necessary to show that it was for his benefit. But it was shown. He was the father of Henry Saling, who was a minor, and was entitled to his earnings.

LEONARD, Judge, delivered the opinion of the court.

The second instruction, given at the instance of the plaintiff, is erroneous. The plaintiff, according to his own proof, let Scott have the mare, either under a loan or upon a conditional sale, that was to vest the title in him upon his doing certain work he had contracted to do for the plaintiff. The mare was afterwards seen in the possession of Henry Saling, a minor son of the defendant, and originally a co-defendant with him. It appeared on the part of the defendant, that after Scott got possession of the mare, he sold her, and that Henry Saling got possession of her from a third person, after she had passed through several purchasers, and then sold her himself. Upon the plaintiff's demanding her of the son, which, according to the plaintiff's proof, was after the latter had "traded her off," the defendant said that, from what he had heard about it, he believed she was Scott's mare, at the time of the trade, and advised Henry not to give her up until he had inquired further into the matter. This was the evidence to which the instruction was applicable, and in reference to which its propriety must be judged of and determined.

Undoubtedly, all who wrongfully contribute, in any manner, to the commission of a trespass, are responsible as principals; and those who improperly advise or encourage the wrong, or, when it is committed for their benefit, subsequently agree to it, are equally liable with those who put their own hands to the act. In this matter, the law does not distinguish between different shades of guilt, or different degrees of efficiency, in effecting the wrong, but holds every one, who has improperly contributed to it, responsible for the whole injury.

There is no aspect of the case, however, in which this advice ought to render the father liable for the alleged wrong of the son. The rule adopted in Massachusetts, which seems also to be the rule of the English law, is, that one who acquires the possession of personal property from a bailee of the owner, wrongfully parting with the possession, is liable in trespass to the

Sartin v. Saling.

owner for such taking, although it was in good faith, and without any knowledge of the bailee's breach of duty in disposing of the property. (*Stanly's adm'r* v. *Gaylord*, 1 Cush. Rep. 536.) But in New York, trespass will not lie against one who comes to the possession of the goods by delivery, and without any fault on his part, although the person who made the delivery had no title, and was a wrongdoer; and the only remedy there, against such a person, is by an action of trover, after a conversion by a sale or otherwise. (*Barret* v. *Warren*, 3 Hill, N. Y. Rep. 350. *Storm* v. *Livingston*, 6 Johns. Rep. 44.) If the son had disposed of the mare before demand made upon him, which was the time of the father's interference in the matter, the wrong was then consummated, under either view of the law, and the father's advice could not have contributed to it, but, at the utmost, could only be considered as advice not to make amends until, upon further inquiry, he should be satisfied of his liability; and there is no authority whatever, for saying that the trespass of a minor son is for the father's benefit, and that, therefore, the advice given subjected the father to responsibility on the principle of a subsequent assent to a trespass committed for his benefit. If, however, the mare was then in the son's possession, there was nothing improper in the father's conduct, under the circumstances of the case. Certainly, it was the duty of the son to restore the mare to the plaintiff, if she belonged to him, and he was not advised otherwise. The advice given was, in effect, to examine into the matter, and act accordingly—restore the mare, if she belonged to the plaintiff, but otherwise, resist the demand; in a word, to act as every sensible man, under the circumstances, would have acted; and there is neither authority nor reason for subjecting the father to liability for such conduct, as having thereby improperly contributed to the injury.

The instruction of the court was given under a different view of the law, and, when applied to the evidence, must have misled the jury. The judgment must, therefore, be reversed, and the cause remanded.