WILLIAMS *et al.* v. KANSAS CITY, SPRINGFIELD &
MEMPHIS RAILROAD COMPANY, *Appellant.*

1. **Negligence**: RAILROADS: DANGER OF DECEASED: INSTRUCTION.
Where, in an action against a railroad for the death of a person by
reason of its negligence, there is no evidence that the company's
servants saw or knew of the danger of deceased in time to have
avoided the accident, an instruction is erroneous which permits a
recovery on the ground of such knowledge on the part of the com-
pany's servants.

2. **Railroad**: CLEAR TRACK: NEGLIGENCE. An engineer of a rail-
road company is not bound, as a general rule, to foresee the wrong-
ful presence of persons on the track or cars, but cases may arise
where, though the company is entitled to a clear track, it cannot
fairly presume that it is clear.

3. ———: ———: ———. It then becomes the duty of the company
to look out for persons on the track, and its liability in such case is
not limited to want of care after discovery of the danger of the
person injured.

4. ———: ———: ———. Where the railroad company has the
right to have and the right to anticipate a clear track, there is no
liability to one unlawfully on the track on the ground that he
might have been seen by the exercise of ordinary care in time to
have avoided the accident.

5. ———: ———: ———. The only duty incumbent on the railroad
in such case is not to injure wantonly or with reckless carelessness;
this, however, does not require the railroad to be on the outlook
for trespassers.

6. ———: ———: ———. The evidence in this case *held* not to show
that the accident was caused by the wantonness or reckless care-
lessness of the railroad.

7. **Contributory Negligence**: BOY. Where a boy uses the care
reasonably to be expected from one of his years and capacity, he
is not guilty of contributory negligence, and whether or not he did
use such care is a question for the jury.

*Appeal from Howell Circuit Court.*—HON. J. B.
WOODSIDE, Judge.

REVERSED.

*Wallace Pratt* and *C. B. McAfee* for appellant.

(1) The deceased was a trespasser, or was at least where he had no right to be, and there is no evidence that any agent, servant or employe of defendant saw the boy at all or knew that he was in any danger. *Halligan v. Railroad*, 71 Mo. 113; *Henry v. Railroad*, 76 Mo. 288; *McAlister v. Railroad*, 19 A. & E. R. R. Cas. 108; *Schlefflin v. Railroad*, 19 A. & E. R. R. Cas. 173; *Duff v. Railroad*, 2 A. & E. R. R. Cas. 1; *Cauley v. Railroad*, 2 A. & E. R. R. Cas. 4; *Railroad v. Holmes*, 5 Col. 197; *Railroad v. Depew*, 12 A. & E. R. R. Cas. 64; *Railroad v. Richards*, 12 A. & E. R. R. Cas. 70; *Railroad v. Graham*, 12 A. & E. R. R. Cas. 77; *Bell v. Railroad*, 86 Mo. 599; *Rine v. Railroad*, 88 Mo. 392. (2) The deceased was guilty of negligence directly contributing to his injury. *Parnell v. Railroad*, 76 Mo. 80; *Lennix v. Railroad*, 76 Mo. 86; *Turner v. Railroad*, 74 Mo. 602; *Henze v. Railroad*, 71 Mo. 636; *Zimmerman v. Railroad*, 71 Mo. 476; *Stetson v. Railroad*, 67 Mo. 670. (3) The conduct of plaintiffs' attorney in telling the jury that the instructions given on part of the defendant were only given to prevent a reversal, and would not have been given as the law if plaintiffs had objected to them, was improper, and the court erred in not correcting and rebuking when called on to do so by defendant. *Ritter v. Bank*, 87 Mo. 574. (4) The court erred in not submitting the special issues prayed for by defendant. Acts 1885, p. 214. (5) The court erred in giving the first two instructions for plaintiffs. There was no evidence upon which to base the first, and the second is not the law. The damages should have been five thousand dollars or nothing. R. S., sec. 2121; *Procter v. Railroad*, 64 Mo. 122; *Rafferty v. Railroad*, 15 Mo. App. 559.

*W. N. Evans* and *Livingston & Pitts* for respondents.

The trial court did not err in overruling the demurrer to the evidence. The plaintiffs' evidence established a clear case of negligence. But when there is any evidence, however slight, tending to establish the allegations of the petition, the court cannot withdraw the case from the jury. *Williamson v. Fiecher*, 50 Mo. 198 ; *Cook v. Railroad*, 63 Mo. 397 ; *Kelly v. Railroad*, 70 Mo. 604 ; *Walsh v. Morse*, 80 Mo. 568.

BLACK, J.—The plaintiffs, who are husband and wife, brought this suit to recover damages for the death of their son, who was run over by defendant's cars and killed at the town of Augusta, also called Thayer. Plaintiffs kept a boarding-house in the town about one hundred yards from the depot. The boy was intelligent, twelve years of age, and had been raised on and near railroads. A train of eight or ten box-cars in front, loaded with ties, and several empty cars in the rear, came in from the south. Suter, the switch engineer, took the train up opposite the freight depot. The flat-cars were then cut loose and left standing on the main track, and he ran the box-cars north a half or a quarter of a mile, intending to place them on a side track, but before the rear car passed the north end of the switch he heard a passenger train coming from the north. He reversed his engine, signaled the passenger train to come forward, and ran his train back and put the flat and box-cars on the switch at the south end. As the box-cars hit the flat-cars, one of the latter ran over the boy.

The petition alleges that the boy was killed at a crossing and at a point opposite the freight depot, but the evidence shows that he was run over three or four hundred feet north of the street, which crosses the track, and at a point opposite the freight depot, where there is

no crossing at all. Hazen, a witness for plaintiffs, testified that he got on top of one of the box-cars before they were run up to the depot; that he rode up to the north end of the switch, and that when the cars started back on the main track the brakeman ran along on the ground and signaled Suter to stop; that the brakeman then climbed up on one of the cars and again signaled Suter to stop when within three hundred feet of the flat-cars, but Suter did not stop or check up. Hazen says he was nearer the flat-cars than the brakeman and that he did not see the boy. Several of the witnesses were at and near the freight depot and they all say they did not see the boy on the car or track. One witness says the boy was on the flat-cars when they were going up to the depot, but this witness did not see the boy at that place. It seems the boy said, after he was hurt, that he was sitting on a brake, at the time of the accident. The witness Hazen, who was on the box-car, to pass away the time as he expresses it, says there was danger from both ways and that he jumped off, when within one hundred feet of the flat-cars, without being hurt; that Suter shut off steam before he struck the flat-cars. He and other witnesses testified that the box-cars struck the flat-cars "at an unusal rate of speed"; "it was a harder jam than usual"; "cars seemed to bow up where coupled."

Hazen says the jam broke the engine loose from the box-cars. The proof is that the bell was ringing all the while, and the witnesses who testify as to rate of speed, with one exception, place it at six to eight miles per hour. Other evidence is to the effect that the jam was not of unusual force, and that the cars were not injured by it. There is evidence that Suter was often about saloons and drank considerably, but there is no proof that he was intoxicated at the time of the accident, and the only witness that speaks of his competency, says he was regarded as a careful engineer. There is evidence that plaintiffs got water for their boarding-house from a

spring, to reach which they had to cross these tracks, but there is no evidence that the boy was on any such an errand. He was three or four hundred feet north of the crossing by which the spring was reached.

The most important question in this case is, whether the defendant's instruction, asked at the close of the case, in the nature of a demurrer to the evidence, should have been given. This question will, however, be considered in the light of the second instruction given at the request of plaintiffs, which is as follows:

"2. That although the jury may believe from the evidence that the deceased, Charles Williams, was guilty of negligence by being on or about defendant's track or cars at or near its depot, yet if they further believe from the evidence that his death could have been prevented by the exercise of reasonable care on the part of defendant's servants and employes after discovery of danger in which the said Charles Williams stood; or if defendant's servants and employes failed to discover the danger in which said Charles Williams was at the time, through their recklessness and carelessness, when the exercise of ordinary care would have discovered his danger and averted the calamity, then the defendant is liable and the jury should find for the plaintiffs."

It must be kept in mind throughout this case, that the boy, at the time of the accident, was on a car or the track in the defendant's switch-yard, and that too without invitation or right. In short he was a trespasser. The principles of law which are to be applied in cases of this kind are not to be confounded with those which are applied where the party is on the car or track by right; nor with those which regulate the duties of railroad corporations at public crossings, or where the company has violated some statutory or municipal regulation.

It has been held in a number of cases, where the party injured or killed was wrongfully on a railroad track, was a trespasser, that in order to make the

defendant liable it must appear that the proximate cause
of the injury was the omission of the defendant to use
reasonable care to avoid the injury, after becoming aware
of the danger to which the injured party was exposed.
*Isabell v. Railroad*, 60 Mo. 475 ; *Harlan v. Railroad*,
64 Mo. 480 ; *Zimmerman v. Railroad*, 71 Mo. 477 ;
*Yarnell v. Railroad*, 75 Mo. 583 ; *Maher v. Railroad*,
64 Mo. 267. Whilst the evidence shows that the brake-
man, when on the ground at the north end of the switch,
and when on top of the car, signaled the engineer to
stop, yet it is clear he gave the signal, not because he
saw the boy on the car or track, but because he sup-
posed the box-cars were to be placed on the side track
and not run back on the main track. There is indeed
nothing to show that either he or the engineer saw or
knew that the boy was on or about the flat-cars. Not a
witness saw the boy on the car at the time of the acci-
dent, though some of them were in a more favorable
position to see him than the brakeman. There is no
evidence upon which to base a liability on the ground
that the defendant's servants saw or knew of the danger
to which the boy was exposed, and for this reason the
plaintiffs' second instruction should not have been given.
Indeed the third instruction, given at the request of the
defendant, told the jury that there was no evidence that
defendant's servants saw or knew that he was on the
car or track.

But it is necessary to examine the other branch of
the plaintiffs' second instruction. The general rule of
the authorities before cited implies that the engineer is
not bound to foresee the wrongful presence of persons
upon the track or cars. The rule, however, as before
stated, will, in some cases, require a modification. It
was said in case of *Harlan v. Railroad*, 65 Mo. 22, that
the company would be liable, though the person injured
or killed was wrongfully on the track, if the defendant
failed to discover the danger through the recklessness

or carelessness of its employes, when the exercise of ordinary care would have discovered the danger and averted the calamity. This qualification of the general rule was in substance asserted in *Scoville v. Railroad*, 81 Mo. 434; *Frick v. Railroad*, 75 Mo. 595; *Kelley v. Railroad*, 75 Mo. 138. The reason for the application of this qualification of the general rule in the *Kelley case* is found in these observations made in that case: "From all the evidence, it is by no means a forced deduction, that, if the engineer and fireman had each been at his proper place on the locomotive, and running with that care and watchfulness which is demanded of them in running through the streets of a populous city, they would have observed this man on the track." So in the *Frick case*, the train was going through the suburbs of a city, across and between streets, and where there were dwelling-houses on either side of the track. So if warning should be given to an engineer and seen or heard by him, which a reasonably prudent person would understand to indicate danger ahead, then the company would be liable for his failure to take all reasonable precautions to avoid the danger; and this would be true whether in a city or town or in a country district. *Donohue v. Railroad*, 91 Mo. 357. After stating the general rule, that an engineer is not bound to foresee persons wrongfully on the track, it has been said: "But it has been held that if common experience has shown that persons or cattle are constantly upon the track, a recovery may be had for injuries suffered by them through the neglect of the engineer to look after them, even if he did not see them." Shear. & Redf. on Neg., sec. 493.

Thus it will be seen that cases may and do arise where, though the company is entitled to a clear track, it cannot be fairly presumed that the track will be clear. A duty then arises to look out, and the liability is not limited to want of care after discovery of the danger. Instances of such cases have been given, and perhaps

the rule cannot be generalized in better terms than that quoted from Shearman & Redfield. It will be for the court, in the first instance, to say whether the evidence offered tends to present such a case. But where the company has a right to have, and has a right to anticipate, a clear track, there can be no reason or justice in predicating a liability of the defendant to one wrongfully on the track, on the ground that he might have been seen by the exercise of ordinary care. In such cases there is no duty on the part of the company to watch for him ; and how can there be a liability for a failure to watch ? The liability arises only from breach of duty. The duty in such cases is only not wantonly or with reckless carelessness to injure any one ; and that does not require the company to be on the watch for trespassers. *Rine v. Railroad*, 88 Mo. 392 ; *Hallihan v. Railroad*, 71 Mo. 113. It seems to be sometimes supposed that if the case can go to the jury on the ground of want of care, after the danger is discovered, ˙ that the same evidence will call for a submission of the case on the other ground, namely, "or might have been discovered by the exercise of ordinary care" ; but enough has been said to show that the supposition is not well founded.

Now in this case the boy was on the track or car in the defendant's switch-yards, not at or near a place where he had a right to be. These tracks were much used for the purpose of switching cars and making up trains, being at the end of the road divisions. The train had just gone to the north end of the switch, and there being no evidence that the persons in charge of the train saw or knew that the boy was on the cars or track, they were not bound to foresee or anticipate his presence. It follows that the instruction is wrong as to the second branch, or ground of liability.

The instruction just considered assumes that the boy was guilty of negligence. And the question remains whether the case should go to the jury on

other and different instructions.    If the boy used that care which may be reasonably expected from boys of his age and capacity then he was not guilty of contributory negligence, and whether he did or not use that care is a question for the jury.    So, if the defendant's servants saw him on the car or track, they could not presume that he would get out of the way or out of danger, as they might, under some circumstances, had he been a person of mature years and discretion.    But assume that he was not guilty of negligence, contributing directly to his death, the question is whether there is evidence of negligence on the part of the defendant's servants.    As we have seen, they were not bound to be on the watch for him, and there is no evidence tending to show that they knew he was on or about the car.    As said in the case of *Morrissey v. Railroad*, 126 Mass. 377, where the action was brought by a child four years old and who was on the track, but not seen by the engineer:    "The plaintiff at the time of the accident was a mere intruder and trespasser upon the railroad tracks.    No inducement or implied invitation to enter upon the tracks had been held out.    He was neither a passenger nor on his way to become one, but was there merely for his own amusement, and was using the track as a playground.    The defendant corporation owed him no duty, except the negative one, not maliciously or with gross reckless carelessness, to run over him."

It is true the evidence shows or tends to show that the box-cars were set back against the flat-cars with more than usual force, but it is an undisputed fact that the engineer was endeavoring to avoid or not delay the incoming passenger train, as it was his duty to do. There is no evidence of a wanton injury, and we can but conclude that there is no evidence of gross and reckless carelessness, lest it be that of the witness Burner, which is as follows:    "My livery-stable is across the street from freight depot and above the depot.    I heard the jam together.    I went over at once.    Dr. Crider was

not there.    He was sent for two or three times before I saw him come.    It was five or ten minutes after the boy was hurt.    He came from town.    The train that came backing and jammed the cars was ringing the bell very loud.    It came very fast and was running twenty-five to thirty miles an hour.''

Cross-examined:    Q.    '' Could you not drop off a mile or so from that rate?''    A.    '' No.    If I should change, I should put it faster than what I have stated.'' Q.    '' If a train was running at thirty miles an hour would a person get jammed or hurt in jumping off?'' A.    '' It would depend upon what he lit on.    I am not a railroad man.    The train made noise as it came running back, I think I could have heard two miles.    Have heard trains sixteen miles.''

This witness appears to have been at his stable at the time of the accident, and the only inference from his evidence is, that he did not see the cars when they came together.    He heard the jam, and from that alone makes his estimate of the rate of speed, an estimate at war with all the other evidence in the case.    Whilst the rate of speed of an engine or car may be shown by the opinion of witnesses who saw the engine or car in motion, still such evidence seems to be admitted on the ground that the estimate involves the consideration of many circumstances which cannot be accurately or fully detailed.    Hence the conclusion drawn by the witness from the circumstances is admitted.    It is but the opinion of the witness.    Such an opinion formed by a non-expert solely from hearing the jam of the cars is of no value, and we conclude entitled to no consideration. The witness, if not an expert, ought to have before his mind and eye something more than the noise made by the jam of the cars to entitle his opinion of the rate of speed of the cars to any consideration.

The judgment is reversed.    RAY, J., absent; NORTON, C. J., and SHERWOOD, J., concur in the result; BRACE, J., concurs.