FRANCIS M. POWELL, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, December 3, 1894.

1. **Negligence:** RAILROADS: PERSON ON TRACK. Where there is nothing in the surroundings that would naturally lead employees to expect persons on a railroad track, they have a right to presume a clear track and are under no obligation to be on the alert and owe no duty to a person on the track, except not to wantonly, willfully or by gross negligence, injure him.

2. ———: ———: TOWN: COUNTRY. A railroad should exercise greater care in managing its trains in cities and towns than in the country; and less care is required between streets than at crossings, but ordinary care is required there.

3. ———: ———: DEGREE OF CARE. Where there is reason to apprehend that the track is not clear, the liability is not limited to the want of care after discovery of the danger; in this case it is *held* that by reason of the long and extensive use of defendant's track by pedestrians, the duty was laid upon its employees to exercise ordinary care to avoid injuring those frequenting the track.

4. ———: ———: CONTRIBUTORY NEGLIGENCE. Though an injured party is guilty of contributory negligence, a railroad company is still liable for the injury, if it could have prevented it by the exercise of reasonable care after its discovery, or could have discovered it in time to avoid the injury by the exercise of such care.

*Appeal from the Cole Circuit Court.*—HON. D. W. SHACKLEFORD, Judge.

AFFIRMED.

*Wm. S. Shirk* for appellant.

(1) At the close of plaintiff's evidence defendant prayed a demurrer to the defendant's evidence. The court refused to sustain the demurrer. This was error. The plaintiff's own evidence showed him guilty of such gross contributory negligence as barred a recovery.

*Purl v. Railroad*, 72 Mo. 168; *Swigert v. Railroad*, 75 Mo. 475; *Maloy v. Railroad*, 84 Mo. 270; *Yarnall v. Railroad*, 75 Mo. 575; *Oshertagg v. Railroad*, 64 Mo. 421; *Rine v. Railroad*, 88 Mo. 392; *Yancy v. Railroad*, 93 Mo. 433; *Maxey v. Railroad*, 113 Mo. 1; *Williams v. Railroad*, 96 Mo. 275.    And it is wholly immaterial under such circumstances, that the train was running at a rate of speed forbidden by ordinance.    *Taylor v. Railroad*, 86 Mo. 457, and cases cited.    Nor does it matter, that no signals were given.    *Lenix v. Railroad*, 76 Mo. 86.    (2) Plaintiff was a trespasser, and defendant's servants were not bound to be on the lookout for him, but were only bound to avoid injuring him, after discovering him in a position of danger.    It was therefore error to give plaintiff's first instruction, and to refuse to give defendant's second and third instructions. *Rine v. Railroad*, 88 Mo. 392; *Williams v. Railroad*, 96 Mo. 275; *Hyde v. Railroad*, 110 Mo. 272; *Henry v. Railroad*, 76 Mo. 295; *Mason v. Railroad*, 27 Kan. 85; *Hallihan v. Railroad*, 71 Mo. 113; *Morrisey v. Railroad*, 126 Mass. 377; *Bell v. Railroad*, 86 Mo. 599; *Barker v. Railroad*, 98 Mo. 50; *Shaw v. Railroad*, 104 Mo. 648. (3) The facts in this case are in principle exactly the same as in the cases of *Williams v. Railroad, supra*; *Hyde v. Railroad, supra*; *Maxey v. Railroad*, 113 Mo. 1; *Harris v. Railroad*, 40 Mo. App. 255. (4) The plaintiff's first instruction is wrong for the further reason that it in effect tells the jury that the defendant was liable, notwithstanding plaintiff's contributory negligence, if the evidence showed that pedestrians generally were in the habit of walking on its tracks, going to and from the ferry with defendant's tacit knowledge and consent for two reasons: *First*. Even if such were the case, the plaintiff was still bound to use the utmost care and diligence in looking after his own safety.    *Gurley v. Railroad*, 104 Mo. 211, *loc. cit.*

226; *Stillson v. Railroad*, 67 Mo. 671.    *Second*.    The evidence shows that the people from the ferry boat do not generally go down the tracks but that the great mass of them went around by the streets.    Ab. Rec., pp. 12, 13.

*Silver & Brown* and *J. W. Zevely* for respondent.

(1) The demurer to the evidence was rightfully overruled.    (2) The court did not err in refusing to limit defendant's liability to want of care after discovery of plaintiff's danger, and in instructing for plaintiff that the company was liable if its servants could have discovered the danger by the exercise of ordinary care in time to have avoided the accident and failed to do so.    *Frick v. Railroad*, 75 Mo. 610; *Williams v. Railroad*, 96 Mo. 275, 279, 281; *Guenther v. Railroad*, 95 Mo. 286; *Dunkman v. Railroad*, 95 Mo. 232; *Lemay v. Railroad*, 105 Mo. 361; *Fiedler v. Railroad*, 107 Mo. 645; *Guenther v. Railroad*, 108 Mo. 18; *Hill v. Railroad*, 26 S. W. Rep. 576.    The facts in this case, viz., the constant daily open use of the defendant's track as a thoroughfare by pedestrians bring this case within the above rule.    The proviso contained in instruction number 1, given for plaintiff, was authorized by the decisions of our supreme court; *Lemay v. Railroad, supra; Guenther v. Railroad, supra; Higgins v. Railroad*, 43 Mo. App. 548; *Lowe v. Company*, 47 Mo. App. 426; *Houx v. Batteen*, 68 Mo. 84; *Wilkinson v. Dock Co.*, 102 Mo. 130.    (3) Where the evidence does not make out a clear case of contributory negligence, the case is one for the jury.    *Bluedorn v. Railroad*, 108 Mo. 439; reaffirmed on second appeal, 25 S. W. Rep. 946; *Drain v. Railroad*, 86 Mo. 574.

SMITH, P. J.—This is an action brought by the plaintiff against the defendant to recover damages for

personal injuries received by the former in consequence of the negligence of the latter.

The alleged injury happened at the City of Jefferson, where the defendant has one main track and four side tracks, the latter being located on the north side of the main track. The side tracks extend from depot of defendant at said city west about two blocks, or about one thousand feet, where they join the main track. Something like one-half mile west of the depot there is a public ferry landing on the Missouri river. Pedestrians, averaging about fifty per day, having occasion to pass to and from the said ferry to the defendant's depot for a number of years, had usually traveled over and along defendant's tracks instead of going, as they might have done, around through the city. There is a shoe factory and a foundry situate on the south side of defendant's main track, two blocks west of the depot. There were sometimes as many as eighty-five girls employed in the shoe factory and nine men in the foundry, many of whom daily passed over the defendant's tracks in going to and returning from the place where employed.

It was not controverted that the defendant's tracks between its depot and the west end of its side tracks had been in daily use by pedestrians for a number of years before the date of the plaintiff's injury. Plaintiff on the day of the receipt of the injury had crossed on the ferry from the north side of the river, intending to go to the defendant's depot, there to meet his daughter, expected to arrive on the defendant's 1 o'clock passenger train. Instead of taking a circuitous route from the ferry to defendant's depot through the city, he proceeded east, along and over defendant's track, until he reached a point within the defendant's switch limits, where, while walking on the defendant's side track, just north of its main line, he discovered an engine

approaching him from the east on the same track, when
he stepped south on the main track, letting the engine
pass, while he continued his walk east towards the
depot. The engine proceeded west until it reached the
point where the side track on which it was so running
joined the main track, when the switch was opened and
it passed on the main track. The engine was then
reversed and it proceeded to move east along the main
track on which plaintiff was walking, until it overtook
and struck him, inflicting considerable injury. The
engine had been detached from a freight train then
standing on the first side track north of the main track
for the purpose of allowing it to pass out upon the
main track to a water tank that was located on the
south side of that track, just west of the depot, and
some five hundred feet east of the point where the col-
lision occurred. The injury happened about ten min-
utes before 1 o'clock, at which time the passenger
train was due, and the employees of the defendant in
charge of said engine were in a hurry to get to the
tank, take water and get out of the way of the passen-
ger train. The engine was moved at a speed of ten
miles an hour, though the ordinances of the city for-
bade the defendant to move its trains through the city
at a greater speed than five miles an hour. If the
plaintiff had turned his head, he could have seen the
engine approaching him from the west; but this he did
not do, but leisurely walked on, seemingly unconscious
of his peril. The wind was blowing, and it is likely, in
consequence of that, he did not hear the noise of the
approaching engine.

The employees of the defendant in charge of the
engine testified that they did not see the plaintiff,
either in passing along the side track west nor in ap-
proaching the water tank east of the switch. The
defendant's tracks west of the depot to the switch were

straight, clear and unobstructed. There was nothing to hinder the plaintiff, if he had looked, from seeing the defendant's moving engine, nor the defendant's employees in charge of the engine and tender from seeing the plaintiff, both while on the side track and on the main track. The plaintiff testified that as the engine was going west on the side track, the whistle was blown and then he got off that track. He testified that he did not hear the whistle after it passed him on the side track. The defendant's tracks at the place where the plaintiff was injured occupy an unopened part of Water street and the city, situate between the north boundary of Water street and the river, under an ordinance of the city authorizing such occupancy.

The case went to the jury on substantially these facts, resulting in judgment for plaintiff, from which defendant has appealed.

The principal question which we are obliged to consider arises out of the action of the trial court in the giving and refusing of instructions. The court, at the instance of plaintiff, told the jury that, although he was guilty of negligence in walking upon defendant's track, yet if the jury believe from the evidence that while so upon the track said Powell became in imminent peril of being struck by defendant's locomotive and tender, and the defendant's employees in charge of said locomotive and tender became aware of his peril of being struck in time to have enabled them, by the exercise of ordinary care, to stop said locomotive and tender, and to have averted the injury to the said plaintiff; or, if the jury believe that said employees, by the exercise of ordinary care, could have become aware of his peril in time to have done so, and that they failed to exercise such care and stop said locomotive and tender, and that by reason of the failure to stop said locomotive and tender the

said plaintiff was struck and injured, then the jury should find for the plaintiff and assess his damages as stated in other instruction given for the plaintiff, provided the jury find and believe that at the time of and prior to plaintiff's injury pedestrians generally were in the habit, with defendant's knowledge and tacit consent, of using its right of way and tracks in passing from the ferry landing and points west of the place of the accident to the defendant's depot, east of it.

The court refused to instruct the jury, at the request of the defendant, to the effect:

1. If they believed, from the evidence, that the plaintiff, at the time he was injured, was walking upon or too close to one of defendant's tracks in its yards or depot and switch grounds in Jefferson City, and not at a point where such track crosses any public road or street, or where the same runs in or upon such public road or street, then he was a trespasser upon such track and the defendant's servants in charge of the engine which struck owed him no duty whatever, except not to willfully injure him; and, unless the jury believe from the evidence that defendant's servants in charge of the engine which struck him actually saw him in a position of danger, or knew that he was in such dangerous position, in time to have stopped the engine before it struck him, by ordinary effort and exertion on their part, then the plaintiff could not recover.

2. That a person walking up a railroad track at a place other than where it runs across a public road or street or in and upon such road or street, does so at his own peril, and it is his duty to keep a constant watch both by eye and ear for the approach of engines from every direction, and if he fails to see or hear an engine approaching him and is struck by it while so walking upon such track, without being actually seen by the persons in charge of and running such engine,

or knowledge on their part that he was on such track, he can not recover. And if the jury believe from the evidence that at the time plaintiff was struck he was walking upon or near enough to defendant's railway track to be struck by an engine running thereon, at a place where such track neither runs in or across a public road or street, without having been actually seen by the person in charge of and running such engine and without knowledge on their part that he was on such track, then he could not recover.

3. That it was wholly immaterial whether the agents and servants of defendant, managing the engine which struck the plaintiff, could have seen him if they had been on the lookout for him, or at what rate of speed the engine was running when it struck plaintiff, or whether the whistle was sounded or the bell was rung.

It is obvious that these instructions assert opposing theories of the law applicable to the facts of the case which the evidence tends to prove; the plaintiff's theory being that, if the defendant's empolyees engaged in managing the engine could, by the exercise of ordinary care have become aware of the plaintiff's peril in time to have stopped the engine and averted the injury, and, failing to do so, there is liability; while the defendant's theory is that, unless defendant's said employees actually knew or saw the plaintiff's perilous situation in time to have stopped the engine by ordinary effort before it struck him, there was no liability; and, further, it was immaterial whether the defendant's employees managing the engine could or might have seen plaintiff had they been on the lookout.

The plaintiff, it is clear, was at a place on the defendant's tracks where he had no right to be. And if there was nothing in the surroundings of the place

where the injury occurred that would naturally lead the employees of the defendant, managing the engine which struck the plaintiff, to expect that persons might be there on defendant's tracks, then the employees were under no legal obligation to be on the alert. In such case, defendant's employees would have the right to presume its tracks were clear, and defendant would owe plaintiff no duty except not to wantonly, willfully, or by gross negligence injure him. It was not in duty bound to look out for him. *Fiedler v. Railroad*, 107 Mo. 645; *Barker v. Railroad*, 98 Mo. 50; *Maher v. Railroad*, 64 Mo. 267; *Hallihan v. Railroad*, 71 Mo. 114; *Maloy v. Railroad*, 84 Mo. 270; *Rine v. Railroad*, 88 Mo. 392; *Williams v. Railroad*, 96 Mo. 275; *Langan v. Railroad*, 72 Mo. 394.

It has been repeatedly ruled that greater care must be exercised by employees managing a train of cars within the limits of a city, town or village than is required in the country. *Frick v. Railroad*, 75 Mo. 595; *Brown v. Railroad*, 50 Mo. 461; *Maher v. Railroad, supra; Hicks v. Railroad*, 64 Mo. 439; *Harlan v. Railroad*, 65 Mo. 24. A less degree of vigilance will ordinarily be required between streets of a city, town or village than at a street crossing or where running longitudinally in a street; but some vigilance is even required between streets and the degree required must necessarily vary with attendant circumstances. In any case the requisite degree of vigilance may be properly designated by the words "ordinary care;" that is, such care as would ordinarily be used by a prudent person performing a like service under similar circumstances.

Where there is reason to apprehend that the track may not be clear, the liability is not limited to want of care after the discovery of the danger. *Williams v. Railroad*, 96 Mo. 275, 279 and 281; *Guenther v. Rail-*

*road,* 95 Mo. 286; *Dunkman v. Railroad,* 95 Mo. 232; *Lemay v. Railroad,* 105 Mo. 361; *Fiedler v. Railroad, supra; Guenther v. Railroad,* 108 Mo. 18.

The evidence, as has already been stated, shows that the defendant's tracks at the place where the injury in question occurred had been for years in daily use by pedestrians going to, and returning from, the ferry landing and the factories in the vicinity. The defendant had acquiesced in such use. It had not objected to the use of the tracks by pedestrians. No notice was there posted forbidding the use of the same, as in *Hyde v. Railroad,* 110 Mo. 272. The defendant's tracks had been so long and so extensively used by the public, from its depot west to the ferry landing, that defendant must be held to have had a knowledge thereof. The knowledge that pedestrians were constantly passing over its track, then laid upon its employees, managing its engines and trains, the duty to exercise ordinary care and watchfulness, so as to avoid injuring such pedestrians so frequenting its tracks at that place. If the defendant's employees, managing the engine which struck plaintiff, had been at their proper places, exercising the ordinary care required of them, after passing from the side track on-to the main track, and while moving thereon east, they could have discovered plaintiff, and by sounding the whistle or ringing the bell, have warned plaintiff to leave the track; or, if he heeded not their signals, they could then have stopped the engine in time to have avoided the collision. But instead of exercising such vigilance and care, they hurriedly moved the engine forward at the unlawful speed of ten miles per hour without taking the ordinary precaution to look ahead to see whether the track was clear or not. Their failure to discover the danger in which the plaintiff was, resulted from their carelessness and recklessness; for,

had they exercised ordinary care, they could have discovered it and avoided the injury. It follows that the plaintiff's instruction did, and defendant's did not, announce the proper rule for the government of the jury in determining the issue to them submitted.

But it is contended by defendant that the plaintiff, by walking on the defendant's track at the place where he received his injury, was thereby guilty of such contributory negligence as ought to preclude a recovery. The rule is well settled in this state that, notwithstanding the injured party may have been guilty of contributory negligence, a railroad company is still liable for the injury if it could have been prevented by the exercise of reasonable care on the part of the company after the discovery of the danger in which the injured party stood; or, if the company failed to discover the danger through its own recklessness, *when the exercise of ordinary care* would have discovered it and avoided the injury. *Guenther v. Railroad, supra; Fiedler v. Railroad, supra; Lemay v. Railroad, supra; Williams v. Railroad, supra; Dunkman v. Railroad, supra; Frick v. Railroad, supra.*

The evidence shows that, when plaintiff saw the engine approaching from the east on the side track, he stepped off that track onto the main track, and then it passed on to the west. If he heard the noise it made while returning eastward to the tank, he must have supposed it was still on the side track and hence did not look back at it and get out of its way. He was, no doubt, unaware that it was returning on the main track on which he was walking. He was unconscious of his peril. While it was, no doubt, negligence on his part to walk on defendant's tracks where he was injured, still, if the employees managing the engine which struck plaintiff, had been in the exercise of ordinary care, they would have discovered the plaintiff's

danger in ample time to have averted the injury; and, having failed to exercise such care, in consequence of which plaintiff was injured, it seems to us that, according to the rule just stated, the defendant must. be liable. We have examined the several cases cited by defendant, but find none of them are, as is supposed, analogous in fact or principle to the present case. The case was fairly submitted to the jury under proper instructions on the evidence, and their finding is conclusive on us.

We are unable to discover any error materially affecting the merits, so that it necessarily results that the judgment of the circuit court must be affirmed. All concur.