MARY J. HUTCHINSON, Respondent, v. RELIANCE
REALTY COMPANY, Appellant.

**St. Louis Court of Appeals, April 23, 1901.**

1. **Negligence: INSTRUCTION: PRACTICE, TRIAL: PRACTICE,
   APPELLATE: EVIDENCE.** Instructions suggesting theories of a
   case not supported by any evidence, should be refused.

2. ——: ——: ——. In the case at bar, but two theories of the
   case should have been submitted to the jury; either that plaintiff
   was pushed off the elevator by the servant operating the same, or
   that she tried to board it after it started with its doors nearly
   closed and was knocked off while clinging to it in its upward as-
   cent.

Appeal from St. Louis Circuit Court.—*Hon. J. W. Booth,*
Judge.

REVERSED AND REMANDED.

STATEMENT OF THE CASE.

The defendant corporation owned and used the Carleton
Building on the northeast corner of Olive and Sixth streets
in the city of St. Louis when the accident to plaintiff hap-
pened.  She fell down the elevator shaft therein from the
seventh floor to the third or lower, and was marvelously saved
by lighting astride of the loop of the rope, from whence she
was rescued.  Nevertheless she received injuries.  Her hands
were badly lacerated by the rope running through them, and,
it is claimed, a prolapsed womb resulted.  Plaintiff's testi-
mony is that she entered the building in company with her

sister-in-law, Mattie Hutchinson, who had business with a servant employed there, near the close of the afternoon. They went to several floors and finally to the seventh. From there they intended to descend. The plaintiff says that as the elevator approached from below, Mrs. Mattie Hutchinson signalled for it to stop by speaking to the boy in charge. He did so, opened the doors, Mrs. Mattie stepped in, the plaintiff attempted to follow her when the operator pushed her back and started the elevator upwards. Plaintiff grabbed her sister-in-law's cape and held on until the elevator had risen three or four feet above the floor they were on; she then fell off, struck the edge of the shaft, was detained there a moment by a woman who clutched her skirts, slipped off, caught the rope and went down about four stories until she was stopped astraddle of the loop near the third floor. The following will display her version of the occurrence: "Q. Now, what did you do there? Just describe the events leading up to the time you fell; tell the jury how it occurred? A. Why, as the elevator came up, Mrs. Hutchinson went to get on and I went to get on with her and I had one foot on and he started the elevator and pushed me back. Q. When she got on were the doors open? A. Yes, sir. Q. What was the condition of the doors when you put your foot on the elevator? A. They were open. Q. You may state whether or not he had started to open or close the doors when you stepped on the elevator? A. He had not. Q. How far were you behind Mrs. Hutchinson who had gotten in ahead of you? A. Right behind her. I guess about two feet behind her. Q. Now in what manner did this elevator man push you, you say he pushed you off? A. He pushed me back with his hand. Q. On what part of your person did he place his hand when he pushed you. A. Right here." (indicating). On cross-examination she said, "Q. Was anybody else in the elevator besides him and your sister-in-law?

A. No, sir. Q. There was plenty of room in there for you? A. Yes, sir. Q. You couldn't discover any reason why he pushed you out before he started the elevator? A. No, sir. Q. I understood you to say that the floor of the elevator cage was on a level with the other floor when you put one foot in it? A. Yes, sir. Q. And before you got a chance to put the other foot in he pushed you off? A. Yes, sir."

There were three other eyewitnesses. They all tell a story like this. As the elevator approached, plaintiff was leaning over talking to Mrs. Josephine Peltier, who was cleaning cuspidors. Mrs. Mattie Hutchinson stepped in, the doors closed, the car started, just then the plaintiff turned around or looked up, saw it was moving, clutched her sister-in-law's cape and by holding to it and having her foot on the edge of the floor of the machine, was carried up until her head struck the top of the gate. That knocked her off. Mrs. Peltier checked her fall by seizing and clinging to her dress, but failed to hold her and she fell down the shaft to the loop. She would have dragged her sister-in-law out and down with her had not the operator held on to that lady. A number of persons besides the eyewitnesses swear the plaintiff exonerated the operator from any blame or fault as soon as she was rescued, saying she alone was to blame; that she had lost her baby a few weeks before and sometimes hardly knew what she was doing.

Among other instructions the following was given:

"If the jury find from the evidence in this case that the defendant, on the twenty-fourth of November, 1899, was using the elevator and appliances, mentioned in the evidence, for the purpose of carrying passengers between the several floors of the building described in the evidence; and if the jury find from the evidence that on the evening of November 24, 1899, whilst the elevator of the defendant was stopped at the seventh floor of said building for the purpose of receiving passengers thereon,

the plaintiff undertook to get upon said elevator as a passenger; and if the jury further find from the evidence that while the plaintiff was in the act of getting upon said elevator at said place, and before she had a reasonable time to do so, defendant's servant in charge of said elevator caused or suffered said elevator to be started up, and *caused the plaintiff to be pushed or fall* from said floor of the elevator into the elevator shaft and to sustain injuries; and if the jury find from the evidence that said servant of the defendant in charge of said elevator was negligent *in causing the plaintiff to be pushed or fall from said elevator,* and in so starting said elevator whilst plaintiff was so in the act of getting thereon, then the plaintiff is entitled to recover, provided the plaintiff was exercising ordinary care in entering such car at the time of the injury."

The assignment of negligence in the petition reads: "The plaintiff, desiring and intending to become a passenger upon said elevator, whilst it was stopped to receive passengers, started to get upon said elevator as a passenger, and 'while she was in the act of getting upon such elevator as a passenger, and whilst one foot of plaintiff was on the floor of the elevator, defendant's servant in charge of said elevator *carelessly and negligently caused and suffered said elevator to start upward and pushed the plaintiff from said elevator,* so that she was caused to fall from said elevator, and into the said elevator shaft and down said shaft to the third floor, when she was enabled to stop her fall and be rescued,' " etc.

*Percy Werner* for appellant.

There was no substantial evidence to support the verdict. Appellate courts will grant a new trial where the verdict is so opposed to the evidence and to the probabilities arising from all the circumstances that it can be accounted for only on the

theory that the jury were prejudiced, or that they wholly disregarded the instructions of the court.    Frieze v. Fallon, 24 Mo. App. 439; O'Hara v. Iron & Foundry Co., 66 Mo. App. 53-56.    The first instruction given on behalf of plaintiff was erroneous, in that it submitted to the jury an issue other than that framed by the pleadings.    Instructions must be drawn in conformity to the pleadings, and should limit the issues to those made by the pleadings, and if the evidence shows a different state of facts from those set out in the pleadings, and the party desires an instruction in accordance with those facts, he should first ask leave to amend the pleading to make it conform to the evidence.

*A. R. Taylor* for respondent.

The criticism of plaintiff's first instruction is without merit.    The petition alleges that, whilst plaintiff was entering the elevator, whilst stopped at the seventh floor to receive passengers, and after she had stepped with one foot on the floor of the elevator, defendant's operator in charge of its elevator "carelessly and negligently caused and suffered said elevator to start upward and pushed the plaintiff, so that she was caused to fall from said elevator and into said elevator shaft, and down said shaft to the third floor, where she was enabled to stop her fall and be rescued," etc.    Now this averment distinctly asserts, as the basic ground of negligence, the careless starting up of the elevator.    This was the cause of her falling into the shaft.    The allegation that the elevator boy pushed her from the elevator is but another enumeration of the cause of the fall.    The negligent starting of the elevator was the main cause.    (2) The petition would have been just as good, if it had only alleged the negligent starting upward so as to cause the fall.    Proof of the negligent starting of the eleva-

tor, under the circumstances made the case, with or without pushing, if it was "so as to cause plaintiff to fall," etc.   Lee v. Knapp, 155 Mo. 642; Frederick v. Allgaier, 88 Mo. 604.

GOODE, J.—The instruction copied in the statement presented a false hypothesis to the jury as a basis for plaintiff's recovery.   There is no substantial testimony tending to prove that while the plaintiff was in the act of getting upon the elevator and before she had reasonable time to do so, "defendant's servant in charge caused or suffered said elevator to be started up and caused the plaintiff to be pushed or fall from the floor of said elevator" into the shaft.   That was the theory propounded to the jury and it contradicts the evidence of both sides.   The cunning workmanship of the petition, which either carelessly or carefully refrained from an explicit statement as to how plaintiff was pushed away, might possibly have authorized the framing of such a charge, if evidence had been adduced to support it, but there was none.   The plaintiff's version of the casualty unmistakably shows a wilful repulsion of her person from the cage by the operator's pushing her back with his hand.   It is impossible by fair intendment or interpretation to collect from her testimony the inference that she was caused to be pushed or to fall by the elevator starting prematurely while she was in the act of stepping inside.

On the other hand, the narratives of the other witnesses, if true, conclusively establish that she was hurt solely by her own fault.   No hypothesis, except those two, that she was pushed off by the servant operating the machine or that she tried to board it after it started with its doors nearly closed and was knocked off while clinging to it in its upward ascent, could properly be submitted.   The above instructions are misleading, without supporting evidence, and should have been refused. Instructions suggesting theories of a case not supported by any

evidence should be refused. Boose v. Thomas, 7 Mo. App. 590; Bean v. Railway Co., 20 Mo. App. 641; Cottrell v. Spiess, 23 Mo. App. 35; State v. Wilforth, 74 Mo. 528; Chouteau v. Searcy, 8 Mo. 723; Benjamin v. Railway Co., 50 Mo. App. 602; Williams v. Railway Co., 96 Mo. 275; Sartin v. Saling, 21 Mo. 387; Jones v. Grossman, 59 Mo. App. 195; Griffith, Admr., v. Railway, 2 Iowa 645; Trapnell v. City, 76 Iowa 744.

Appellant complains of the refusal of the following instruction requested by it: "The court instructs the jury that if you find from the evidence that on the occasion in question, when the elevator on its upward trip reached the seventh floor and stopped for the reception of passengers, plaintiff had her back turned to the elevator and was engaged in conversation with someone on the floor, and failed to notify the operator of the elevator, or indicate to him in any way her desire to board the elevator until after it had again started upward, and that she thereafter attempted to climb on to the elevator by catching and holding on to the garment of the passengers, then no recovery can be had in this case, and your verdict should be for the defendant." Another instruction of similar import was given, which warranted the court in rejecting a duplicate.

Sufficient evidence was introduced tending to prove plaintiff's uterine trouble was brought on by the accident, to leave the question of whether it was or not to the jury. It was specially pleaded. Her physician testified to treating her for it a month or less after the injury, that she had never complained of it before, and was apparently healthy; she swore it followed the hurt in a week or two and that she had never experienced it before. The physician also said such shocks might cause the disease, but that frequent pregnancies more often caused it. Plaintiff is a young married woman and had never borne but one child; so that cause is excluded and no

other probable or possible one but the injury was shown. The evidence leaned heavily to the theory that the plaintiff was hurt by her own desperate carelessness in precipitately catching the elevator cage when the doors were almost shut and the car ascending. We would not hastily overrule the exception that the verdict was induced by passion or prejudice in the absence of other just ground for complaint. As it is, the judgment is reversed and the cause remanded because of the giving of the erroneous instruction. All concur.