JOSEPH LENK, Respondent, v. KANSAS & TEXAS COAL COMPANY, Appellant.

Kansas City Court of Appeals, May 8, 1899.

1. **Mines and Mining:** NEGLIGENCE: CONTRIBUTORY NEGLIGENCE: PLEADING. A petition to recover damages for personal injuries by a coal miner pleaded unconsciousness resulting from defendant's negligence as an excuse from his contributory negligence in being out of his place when he was injured. There was no evidence to support this feature of the petition. Held, his contributory negligence was thereby admitted.

2. ———: STATUTE: CROSS-CUT. The statute requiring cross-cuts between the parallel entries in coal mines shows the object of such cross-cuts is for the circulation of air in the mines and not for pass_ways or places of rest, and a mine owner is not required to make them safe for this latter purpose.

3. **Master and Servant:** NEGLIGENCE: IN SERVICE OF THE MASTER: MINES AND MINING. In order to hold the master liable for personal injury happening to the servant, the latter must at the time be engaged in the service of the master and certain qualifications are suggested in applying this rule to the case of a miner injured by a falling rock in the mine.

*Appeal from the Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED.

ADIEL SHERWOOD for appellant.

(1) The demurrer to the evidence at the close of plain-tiff's case should have been sustained, because, first, the injury did not result from the negligence alleged; Clark v. Fairley, 24 Mo. App. 429; Kain v. Railway, 29 Mo. App. 53; second, because the injury occurred when plaintiff had left the work-ing place provided for him of his own motion and gone to a place where his duties did not call him and where defendant

had no reason to expect he would go. He took a place of danger of his own motion. Boemer v. Lead Co., 69 Mo. App. 606; Bunt v. Gold Mining Co., 24 Fed. Rep. 849. And contributory negligence is always a good defense. Railway v. Davis, 53 Fed. Rep. (C. C. A.) 61; Aerkfetz v. Humphreys, 145 U. S. 418; Railway v. Schumacher, 152 U. S. 77; Callahan v. Railway, 11 Fed. Rep. 541; Miller v. Railway, 4 Fed. Rep. 768; Holland v. Railway, 18 Fed. Rep. 243; Nelling v. Railway, 63 N. W. Rep. 568; Maxey v. Railway, 113 Mo. 1; Hayden v. Railway, 124 Mo. 566; Kelsay v. Railway, 129 Mo. 374; Loring v. Railway, 128 Mo. 349; Payne v. Railway, 136 Mo. 576; Huggart v. Railway, 134 Mo. 673; Sinclair v. Railway, 133 Mo. 233; third, not only this, but there was a safe way and unsafe way to make the journey and he chose the latter. Coal Co. v. Reid, 85 Fed. Rep. 914; Butterfield v. Forrester, 11 East, 60; St. Louis Co. v. Brennan, 20 Ill. App. 556; Bolt Co. v. Burke, 12 Ill. App. 369; Cunningham v. Railway, 17 Fed. Rep. 882; Lambos v. Tammerlane, 47 Fed. Rep. 822; Anglin v. Railway, 60 Fed. Rep. 553; Tauler v. Railway, 109 N. C. 223; Sullivan v. Railway, 45 N. Y. Supp. 1083; Moody v. Smith, N. W. Rep. 633; George v. Railway, 19 S. Rep. 784. For, notwithstanding the negligence of defendant if the injury would not have occurred but for the contributory negligence of plaintiff, directly tending to produce it, it is the duty of the court to direct the jury to find for defendant. Railway v. Aspell, 23 Pa. St. 147; Railway v. Callahan, 56 Fed. Rep. 989; Coyne v. Railway, 133 U. S. 370; Railway v. Jones, 95 U. S. 439.

CHAS. P. HESS and C. G. BUSTER for respondent.

(1) Defendant was criminally negligent in not driving cross-cuts at intervals not to exceed fifty feet apart in its mine. Session Acts of 1895, page 227. (2) Plaintiff's injury was caused by the direct result of appellant's negligence in not driving cross-cuts as required by law. After respondent

worked several hours he became sick, dizzy and partially un-conscious. He then sought air for safety. When one is placed in a situation of peril by another, his attempt to escape danger, even by doing an act which is also dangerous, and from which injury resulted, will not prevent a recovery, if the attempt was the act of a prudent man. Beach on Contrib. Neg., p. 43; Whittaker's Smith on Neg., p. 392, note; Coal Co. v. Hesler, 84 Ill. 126; Railroad v. Becker, 76 Ill. 25; 37 Am. Rep. 386; Kleiber v. Railway, 107 Mo. 240; Petty v. Railroad, 88 Mo. 306, 321; Crowley v. Railway, 24 Mo. App. 119; Taylor v. Railway, 26 Mo. App. 336-340; Buesching v. Gaslight Co., 73 Mo. 229-233; Cook v. Railway, 34 Minn. 45; Smith v. Coal Co., 75 Mo. App. 177-180. (3) The question of contributory negligence on the part of the plaintiff, Lenk, was under the facts and circumstances of this case for the jury, and no error was therefore committed by the lower court. Langan v. Railroad, 77 Mo. 392; Stepp v. Railroad, 85 Mo. 229; Petty v. Railroad, 88 Mo. 306; O'Connor v. Railroad, 94 Mo. 150; King v. Railroad, 98 Mo. 235; Kellny v. Railroad, 101 Mo. 67; Kenney v. Railroad, 105 Mo. 270; Jennings v. Railroad, 112 Mo. 268; Weller v. Railroad, 120 Mo. 635; Baker v. Railroad, 122 Mo. 572; Masterson v. Railroad, 58 Mo. App. 572; Railroad v. Ives, 144 U. S. 409; Railroad v. Peterson, 55 Fed. Rep. 940; Railroad v. Austin, 64 Fed. Rep. 211; 2 Sherman & Redfield on Neg. [4 Ed.], pp. 89, 92, 108, 109, 114, 476, 477; Beach on Contributory Neg. [2 Ed.], par. 36, 40, 188, 189.

ELLISON, J.—This is an action for damages resulting from personal injuries received by plaintiff which were caused by a rock falling upon him. He recovered in the trial court.

The facts are these: Plaintiff was a coal miner and had been engaged at such work about twenty-four years. Defend-

STATEMENT

ant is a coal mining company and had plaintiff in its employ when he was hurt. The mine was operated on the "room and pillar" plan and is

governed by the following statute, Laws 1895, p. 227:    "The owner, agent or operator of any coal mine in this state, employing five or more persons, if said mine is worked on the room and pillar plan, shall cause the work in such mine to be prosecuted in the following manner, and none other, to wit: Two entries must be driven parallel for the ingress and egress of the air, and cross-cuts must be made at intervals not to exceed fifty feet apart, and no rooms, entries or other openings shall be allowed to start inside of the last cross-cut until the next one be made."

Defendant had the two parallel entries properly driven as also the proper "cross-cuts" at distances of fifty feet, except, at the time of the injury to plaintiff, the head of the parallel entry where he was at work had progressed, or been driven, a distance of more than fifty feet (estimated at from sixty-five to ninety-five feet) from the last finished cross-cut.   A cross-cut within fifty feet was being driven at the time of the accident but was not put through.

On the morning of the accident the plaintiff went to work at the head of one of the parallel entry ways and being so far from the last cross-cut the air became foul, or at least so oppressive as to give him the headache and make him dizzy to that degree that he quit work in order to get fresh air.   He walked down the entry way to the first finished cross-cut, at the mouth of which he was in the full rush of pure air.   He walked through the cross-cut into the other parallel entry, thence up to, or near the head of that entry where others were at work.    After passing some words with them, he retraced his steps back towards the mouth of the cross-cut through which he had passed.    Near this mouth of the cross-cut some employees were engaged in fixing a coal car.   He stopped with them a moment and then went into the cross-cut a step or two and sat down (as stated by some witnesses, though he says he did not sit down) when in a few moments a rock from the top fell upon him injuring his arm and breaking his leg.   The

serious nature of the injuries fully justified the amount of the verdict of $800.

From the foregoing, mainly taken from the testimony of the plaintiff given in his own behalf, it is apparent that he was not, at the time he was hurt, at a place where defendant directed him to go or knew he was going, or where any duty in defendant's service called him. In other words, that he had selected a place for his ease, comfort and convenience not necessary for him to select in order to get the air of which he stood in need. Indeed it was wholly unnecesary for him to go over the ground passed over by him after he first came to the mouth of the cross-cut in the entry in which he was engaged, for at that point he was in the full rush of fresh air.

In order to avoid this hurtful fact in the way of plaintiff's case, it is alleged in the petition, that "the air became so foul and tainted so as to make plaintiff sick, dizzy and partially unconscious, whereupon plaintiff, in order to save his life, in that unconscious state and condition of mind and body, wandered towards, to and into the last cross-cut in defendant's mine, in order to obtain fresh air, and while plaintiff was in said cross-cut, without his fault an overhanging rock" fell upon him, etc. There was no evidence whatever to sustain that allegation, nor was anything of that nature submitted to the jury by plaintiff's instructions. On the contrary the entire face of plaintiff's testimony in his own behalf contradicts it. He said that while at work "I did not lose my senses, but I got sick and dizzy." When asked, if he could not have walked further along down to the main entry he answered that he had "no business going down there when I got the full force of the air there" (at the mouth of the cross-cut) "I had no business there; I went to get fresh air in that cross-cut." Then he stated that "after I had got air I went up there" to where Andrews was working in the unfinished cross-cut. That is, he went from where he was working down to the closest

cross-cut, where he got fresh air. After he got the needful air he passed through the cross-cut into the other parallel entry and then went back towards the head of it where Andrews was at work. (He says he went there to see when Andrews would get it through so as to make better air at the head of the entries.) He then retraced his steps back to where a car was being fixed and finally went into the cross-cut, being injured just after entering. So then we have a case where the matter pleaded in the petition, as an excuse for plaintiff's conduct, is not only not supported by the evidence but wholly contradicted by it; and where it was not submitted by instructions, as, of course, it could not have been under the evidence.

We can not interpret the petition in any other way than that it is a concession that plaintiff would be guilty of contributory negligence except for the fact that defendant's first negligence put him in such an irresponsible state of mind that he was not conscious of what he was doing when he took up his position under the overhanging rock. And authorities are cited in plaintiff's brief to the effect that when one is placed in a situation of peril by another, he is not to be held responsible for an error of judgment as to the best means of escape. This is only a further effort to carry out the theory of the petition, but there is no evidence upon which to apply the law; for here the testimony of plaintiff shows he knew that he had fully escaped all peril when he first walked down to the current of fresh air at the mouth of the cut.

MINES and mining: negligence: contributory negligence: pleading.

But aside from the foregoing, the case fails from another consideration. The statute above cited shows that the object of the cross-cuts was for the circulation of air in coal mines. The evidence of both parties shows that was the understanding in this mine. That no care was taken of them further than to see that one was supported until the next one was driven after a sufficient distance had been reached with the parallel entries. They were

——: statute: cross-cut.

then allowed to fall in if they would.     That while no rule had been promulgated against their use, and while employees, as well as bosses, did use them at times for the purpose of taking a near way from one parallel entry to the other, yet it was only done as a matter of personal convenience.     That by walking a greater distance down the main parallel entry to a main cross way a person could go from one to the other without going into or through a cross-cut.

It appears that plaintiff was not engaged in the line of his duty in going to or stopping at the place where he was hurt. He had not been directed to go there, nor did the condition in which he found himself where he was at work make it necessary for him to go there, or near there.     He stopped at that point after he had obtained the air he was seeking and with knowledge that the place was not designed by the defendant for a passage way, but on the contrary that there was another safe way provided.     But more than this; plaintiff, according to one hypothesis in his instruction, *was not at the time of his injury using it as a passage way.     He seated himself therein for rest and his own comfort and convenience.*     If he had passed on through he would not have been hurt.

It is this and other facts which have been stated which, doubtless, have driven counsel to the argument that he had become, by the fault of defendant, irresponsible—that he didn't know what he was doing.     But, as has been already shown, the evidence, including his own testimony, contradicts this.     We are aware that at one point in his cross-examination he stated in answer to a question whether he could not have gotten the benefit of the air at the end of the cross-cut without going through it, that "I was sick and had a headache and don't know hardly what I was doing."     But this was contradicted by the balance of his testimony, not only in words, but by his acts and conduct.     His statement, when viewed in connection with his testimony as to what his object was, what he did and what he thought, is altogether preposterous.     In

Lenk v. Kansas & Texas Coal Co.

the first place he said he had his senses. That he knew where to go for relief, and went. That the reason he did not stop at the end of the cross-cut where he was in a full current of fresh air, was that he wanted to go through and up to where Andrews was at work to see when the unfinished cross-cut would be through. That he then started to return to "his place;" at one point he says to proceed with his work, and at another to get his clothes and dinner bucket. But whether for either object, his whole testimony and conduct shows a man in the possession and exercise of his ordinary reasoning powers. The contention that he was a half unconscious, dazed wanderer in the mine has no foundation of fact.

The case shows, as before stated, that plaintiff was injured while not in the performance of any duty for defendant as its employee and that he was at the place of injury through no fault of defendant.

The authorities cited in defendant's brief show, if indeed authority is necessary on the proposition, that in order to hold the master liable for an injury happening to the servant the latter must, at the time, be engaged in the service of the master. In giving this rule application to this case we have no doubt that it is subject to the qualification that it would include a right of the servant to demand, and the duty of the master to furnish, safe means on the master's premises of getting to the work, or in leaving it. That therefore if this plaintiff, becoming affected by the bad air, had wished to quit the mine, or leave his work to go to the fresh air cut, and had been hurt by a falling rock after quitting work and while going the way provided for that purpose, he would have had a cause of action. Thus if plaintiff had been injured by defendant's negligence, after he quit work and was on his way to the cross-cut, or while standing there in the current of air for relief, he would have had a good cause of action. But the case as made is not of that character. The

MASTER and servant: negligence: in service of the master: mines and mining.

case made is no better than if in instances of bad air in the mine there had been means provided to go to the surface and after getting safely there, the servant should stroll off to some other part of the premises and be injured. The testimony of plaintiff himself shows that defendant provided him with a safe way down to the point designed for relief and where he got relief. His further doings were wholly volunteer.

Since the foregoing was written we have been furnished with a copy of the recent decision of the supreme court in the case of Epperson v. Telegraph Co. which lays down principles and rules applicable here and sufficiently broad to oust plaintiff of any right of action on the facts.

The judgment is reversed. All concur.