OLLIE SKIPTON, Appellant v. ST. JOSEPH & GRAND ISLAND RAILWAY COMPANY, Respondent.

**Kansas City Court of Appeals, December 4, 1899.**

1. **Negligence: FOOTMAN ON RAILROAD BRIDGE: PLEADING: EVIDENCE: DEFECTS IN FOOTPATH: LIGHTS.** Where the petition by a footman on a railroad bridge counts for injuries resulting from a collision with the end of the pilot beam but says nothing of defects in the footway, evidence of defects on the outer edge of such footway are without causal connection with the injury and are properly rejected; so with regard to the absence of lights on the bridge where the petition alleged that the headlight dazzled and blinded the plaintiff.

2. ———: ———: **SIGNALS: NOTICE.** Where a footman on a railroad bridge is injured by a collision with the pilot beam, it is immaterial whether the engineer gave the signals if the footman had notice of the coming train.

3. ———: ———: **PRESUMPTION: WARNING.** An engineer observing a footman on the footpath of a railroad bridge has the right to presume such footman will place himself sufficiently distant from the rails to avoid contact with the engine, and words of caution, if within hearing, are as effective to give notice as bells or whistles.

4. ———: ———: **PASSING TRAIN: CONTRIBUTORY NEGLIGENCE.** To stand or walk on a railroad track or so near thereto as to be in the way of a passing train will defeat recovery for injuries received from collision with such train.

5. ———: **CONTRIBUTORY NEGLIGENCE: ENGINEER: PRESUMPTION.** Where the driver of a vehicle or a footman is near a railroad track with a passing train thereon, the presumption of negligence causing a collision, is with such driver or footman and not with the engineer of the train who is not compelled to provide against the unexpected, the unusual or the extraordinary, or to anticipate that such driver or footman will negligently expose himself.

6. ———: **FOOTMAN ON RAILROAD BRIDGE: EVIDENCE: DEMURRER.** Evidence of a collision resulting in the injury of a footman on a railroad bridge is examined and a judgment sustaining a demurrer to the evidence is affirmed.

Skipton v. St. J. & G. I. Ry. Co.

Appeal from the Buchanan Circuit Court.—*Hon. W. W. James*, Judge.

AFFIRMED.

*Grant S. Watkins* and *James W. Boyd* for appellant.

(1) The court committed error in instructing the jury to find for respondent. Scoville v. Railroad, 81 Mo. 434; Hanlon v. Railway, 104 Mo. 381; Fiedler v. Railway, 107 Mo. 645; Lynch v. Railroad, 111 Mo. 601; Reardon v. Railway, 114 Mo. 384; Chamberlain v. Railway, 133 Mo. 587; LeMay v. Railway, 105 Mo. 361; Williams v. Railway, 96 Mo. 275; Kelly v. Railway & Transit Co., 95 Mo. 279; Dunkman v. Railway, 95 Mo. 233; Baird v. Railway, 146 Mo. 265; Frazier v. Railroad, 75 Mo. App. 253; McCormick v. Monroe, 64 Mo. App. 197; Meyers v. Railroad, 59 Mo. 223; Petty v. Railroad, 88 Mo. 306. (2) The court excluded proper and legal evidence offered by the appellant. See cases above cited and Kansas v. McDonald, 6 Am. Neg. Rep., p. 67, Supreme Court of Kansas. (3) The court committed error in refusing to submit appellant's case to the jury. See cases above cited. (4) Appellant made out a strong case and was entitled to have the jury pass on it.

*M. A. Reed* and *Gardiner Lathrop* for respondent.

(1) The trial court committed no error in excluding the evidence offered to show holes in the floor of the bridge. Under such circumstances it was not prejudicial error to exclude evidence of its condition. If admitted, it would not have relieved her of contributory negligence. Weld v. Railway, 17 Pac. Rep. 306-309. (2) The examination and the cross-examination must relate to facts in issue and be relevant thereto. 7 Am. and Eng. Ency. of Law, 108; Diel v. Stegner, 56 Mo. App. 540; Brooks v. Blackwell, 76 Mo. 309; State to use v. Roberts, 62 Mo. 390. (3) On the trial of the case

plaintiff offered to prove that from the time she entered the bridge until she was struck by the engine, no bell was rung on the engine and no whistle was sounded; but the court excluded this testimony and such ruling is now claimed to be error. It is well established law, even as to statutory signals, that the party injured must be able to show that the omission of the signals was the proximate cause of the injury, and in no case can one recover on account of such omission, who, by other means, has timely notice of the approach of the train, for after he has seen the danger the purpose of the signals is subserved, whether they have been given or not. 3 Elliott on Railroads, sec. 1158; 11 Am. and Eng. Railroad Cases (N. S.), 92; Kreis v. Railroad, 49 S. W. Rep. 879; Pakalmsky v. Railroad, 82 N. Y. 424; Railroad v. Waltz, 40 Kan. 433; State v. Railroad, 35 Am. and Eng. Railroad Cases, 412; Saldana v. Railroad, 43 Fed. Rep. 862. Our own supreme court recognizes the above rule of law. Moody v. Railroad, 68 Mo. 474; McManamee v. Railway, 135 Mo. 440. (4) Opposite counsel also complain that they were not permitted to prove that there were no stationary lights on the bridge. This accident did not happen on a part of the bridge where it was dark. On the contrary, plaintiff alleges in her petition such an excess of light that she was completely dazzled thereby. The law gives those in control of a train the right to presume that, as plaintiff and her companion were coming directly towards the train, they were in possession of their senses, and that they would see not only that the train did not run over them, but that they would also see that their persons were far enough away not to be hit by the passing train. Maloy v. Railroad, 84 Mo. 275-276; Beach on Con. Neg. [3 Ed.], secs. 393, 394; 3 Elliott on Railroads, sec. 1253; Candee v. Railroad, 130 Mo. 152; Maxey v. Railroad, 20 S. W. Rep. 654; Brennan v. Railroad, 83 Fed. Rep. 124; Kreis v. Railway, 49 S. W. Rep. 878; Railroad v. Roberts, 37 S. W. Rep. 870; Railroad v. Brinson, 19 Am. and Eng. Railroad Cases, 56, 52, 55; Pzolla

v. Railroad, 19 Am. and Eng. Railroad Cases, 334-337; Bacon v. Railroad, 15 Am. and Eng. Railroad Cases, 412-413; Railway v. Stroud, 31 Am. and Eng. Railroad Cases, 446-447; Austin, Adm'r, v. Railroad, 91 Ill. 38; Railroad v. Modglin, 85 Ill. 481-484; Moody v. Railroad, 68 Mo. 473, 474; Fletcher v. Railroad, 64 Mo. 488; Wharton's Law of Neg., sec. 384; Loring v. Railroad, 128 Mo. 349-360; 2 Thompson on Neg., 1157; Little v. Car. Cen. Co., 26 S. E. Rep. 110; 4 Elliott on Railroads, sec. 1703, and cases cited; 129 Mo. 374, and cases considered.

SMITH, P. J.—This is an action brought by the plaintiff to recover damages for personal injuries alleged to have been occasioned by the negligence of the defendant. There was a trial in the court below and at the conclusion of the evidence adduced by the plaintiff the defendant interposed a demurrer thereto which was sustained and judgment given thereon accordingly for defendant, from which the plaintiff has appealed. The only question raised by the appeal for our decision is as to the propriety of the action of the court in respect to the demurrer.

The evidence given for plaintiff discloses that the defendant owns a railroad bridge over the Missouri river at St. Joseph, in this state, over which it runs its trains in the transaction of its business as a common carrier. This bridge was about a quarter of a mile in length and sixteen feet, ten inches in width. The floor of the bridge throughout its entire length and width was planked, and in the center of the bridge was laid a railroad track, the rails of which were four feet, eight inches apart, and the space consequently on each side of the track, between the track and the side of the bridge, was six feet and one inch in width. This space on each side of the track was at the time of the accident, and for years before, used by pedestrians as a footpath or sidewalk in crossing the bridge. Plaintiff lived in Kansas, some half or three-quarters

of a mile from the bridge. She and another girl worked in an overall factory in St. Joseph and had been in the habit of crossing over the bridge on foot to their work every morning before daylight, for nearly a month and a half. The train with which the accident happened was a freight train, running on regular schedule time, and crossed the bridge into Kansas about the same time every morning.

On the morning of January 10, 1898, the plaintiff and her girl companion came from their homes to the Kansas end of the bridge to cross it on their way to the factory. Both the plaintiff and her companion testified that they saw the headlight of an engine as they started in to cross the bridge. The plaintiff testified that when they started, both she and her companion were on the north side of the bridge on the part devoted to foot passengers, and that they continued on that side up until the time of the accident, and that at no time were they between the rails of the track. She says that she and her companion were not walking side by side, neither was one directly behind the other, but that her companion was about a step to her left and nearer to the railing of the bridge, and also about a step in advance of her. This would bring the plaintiff nearer the track. She further states that this relative position was maintained from the time of starting until the accident. The plaintiff further testified that after she first saw the light of the engine she did not keep her eye on it; that she walked to about half way of the bridge before the collision occurred; that the speed of the engine, and train thereto attached, was about three miles an hour. The plaintiff testified further that though she saw the headlight about the time she entered upon the bridge, that she did not know that it was approaching her until she was hit; that she could not tell how long it was before she was hit that she ceased to look at the headlight; that she was at no time on the railroad track; that she was struck by the pilot beam of the engine which others testified was nine feet five inches long; that the

distance between its projecting ends and the outside of the bridge walk was about three feet four inches.

The plaintiff's companion testified. that after the plaintiff had been knocked down and the train was stopped the engineer went back to where she was and asked her if she did not see the headlight of the engine and to which inquiry she replied that she did but thought that she was out of the way. Shartle, the fireman on the train, who was called as a witness for plaintiff, testified that plaintiff shortly after the accident stated to him that she saw the headlight and thought she was far enough away to avoid being hit. It was further shown that the bridge was not provided with lights and that as the train approached the place where the collision took place neither the bell. was rung nor the whistle sounded. It was, however, shown that just before the plaintiff was struck she heard the engineer halloo: "Look out, girls."

The court rejected an offer of plaintiff to prove that the floor in the sidewalk of the bridge on which plaintiff was walking was defective in that there were numerous holes therein next to the outside guard rail on the ground that it did not appear from the allegations of the petition, or otherwise, that there was the slightest casual connection between the defect and the injury. Suppose this ruling of the court was improper and the rejected evidence should have been received, yet, was the evidence hereinbefore stated, supplemented by this offer of the plaintiff, sufficient to warrant a submission of the case to the jury?

The fact, if it was a fact, that the defendant had negligently suffered the floor of the bridge to become defective in the manner already stated had no sort of connection with the plaintiff's injury. It indubitably appears that there was ample space on the bridge outside of the railroad track over which the plaintiff could have proceeded with absolute safety had she chosen to do so. There was at least three feet eight inches of space between the west end of the pilot beam that struck

plaintiff and the outside of the bridge which was all the room plaintiff required to pass safely along. This is satisfactorily shown by the fact that plaintiff's companion, who walked still further out from the track than the plaintiff, did not collide with the pilot beam. It is thus seen that the plaintiff was not obliged to walk as near the railroad track as she did to avoid falling through the holes in the floor of the bridge. If there had been no defect whatever in the floor the plaintiff would have walked exactly where she did. We must therefore conclude with the trial court that the relation of cause and effect was not shown by the rejected evidence to exist between the defect in the floor of the bridge and the plaintiff's injury, and therefore such evidence was wholly irrelevant.

Nor can we see that defendant's failure or neglect to have lights of any kind on the bridge had any connection with the plaintiff's injury. It is alleged in the petition that the headlight in the defendant's engine dazzled and blinded the plaintiff so that instead of there being a deficiency of light on the bridge there was, in fact, an excess. The plaintiff saw the headlight at the east end of the bridge as soon as she entered upon the west end. This light, according to the allegations of the petition, must have penetrated the prevailing fog and darkness and illumined the bridge-way for a considerable distance in advance of the approaching train. It must be conceded that the headlight increased in lightness as it approached from the east end of the bridge, where plaintiff first discovered it. There was nothing in the existing physical conditions to prevent the plaintiff from afterwards seeing that it was not stationary.

The plaintiff was no stranger on the bridge. She had crossed it every morning about the same time as on the morning of the accident for nearly a month before. The train with which she collided was running on its regular schedule time—the same time on which it had been running for many months prior thereto. The plaintiff must have met it many times before the collision while on her way to her work at the

factory.  When she entered the bridge on the west end and saw the headlight on the east end, she must have known what train it was carrying it, and that it was approaching.  The fair inference is, that she not only knew the train, whose headlight she had seen, but that it was not standing still.  It is almost, incredible that under such circumstances she did not know whether it was "coming, going or standing still."  It is a matter of common knowledge that when a train or vehicle of any kind is passing over a bridge a peculiar rumbling noise is made, differing from that made when passing over solid ground.  This noise was made by the train as it approached the plaintiff.  She must be presumed to have heard it.  It was a warning to her that the train was approaching and that it must be close by.  If it had been so dark that nothing could be seen then her sense of hearing would have acquainted her with this fact.

The conclusion is irresistible that plaintiff was made fully aware of the approach of the train, because she told the engineer of the train, at the time of the collision, that she saw the train but thought she was out of the way.  And at another time she told the brakeman that she saw the headlight and thought she was far enough away to avoid getting hit.  We must think that the plaintiff saw the train and endeavored to so adjust herself as to avoid contact with its engine.  The failure of the defendant to equip the bridge with lights obviously had no connection whatever with the injury.  It follows from this, too, that had the defendant given the usual signals to warn the plaintiff of the approach of the train the result would not have been different.  The giving of the signals could have had no other effect than to warn her of a fact of which she was already aware.  Whether or not the defendant's engineer was bound to give signals on approaching plaintiff it is not material to inquire, since it sufficiently appears that the plaintiff, by other means, had timely warning of the approach of defendant's train.  Moody v. Railway, 68 Mo. 474; McManamee v.

Railway, 135 Mo. 440; 3 Elliott on Railroads, sec. 1158; Pakalmsky v. Railway, 82 N. Y. 424; Railway v. Waltz, 40 Kan. 433.

Again, the plaintiff was proceeding in her walk on a line two feet outside of the rails. This she thought was far enough away to avoid being hit by the defendant's engine. The engineer was at his post on the right side of the cab, which brought him on the side of the track on which the plaintiff was walking. He was looking ahead. While the headlight enabled him to see the plaintiff and her companion perhaps two hundred feet or more ahead it showed that they were both outside of the rails and in no apparent danger. When he came closer and discovered that one of them was in danger of being hit by the engine he vociferated to them "to look out." This was the quickest possible warning that could reach them —quicker than he could have sounded the whistle. He gave the vocal warning as quick as thought, immediately applied the air and stopped the train as quickly as it was possible to do so. The plaintiff had voluntarily placed herself where it was not possible for him to determine accurately whether or not she was far enough outside of the rail to escape contact with some part of the engine until he was within a few feet of her. As soon as he discovered her danger he gave all the warning that was possible for him to give. He had, as we think, the right to presume that plaintiff had placed herself outside of the rails a sufficient distance to avoid any danger of contact with the engine. And as the engine was moving at the rate of only three miles an hour, he had the right to further presume that the plaintiff, if in danger, would—as she could have easily done—step far enough away to avoid any contact with the passing engine. She only lacked a few inches of being far enough away to have avoided the collision, for she was struck by the end of the pilot beam in the left breast. She miscalculated only a few inches at most. If she made a mistake it was based on calculations of her own and not on those of the

defendant. The law did not require the defendant to give any kind of signal until after the discovery of the plaintiff's danger, and this requirement seems to have been promptly met by defendant's engineer. Words of caution are equally as effective as a bell or whistle, if within reach—as was the case here. Duncan v. Railway, 46 Mo. App. 207. Under the well-settled law of this state, those in control of the the colliding train had the right to presume that as plaintiff and her companion were coming directly towards the train, that they were in possession of their senses, and that they would see, not only that the train did not run over them, but that they would also. see that their persons were far enough away not to be hit by the passing train. Maloy v. Railroad, 84 Mo. 275, 276; Beach on Con. Neg. [3 Ed.], secs. 393, 394; 3 Elliott on Railroads, sec. 1253; Candee v. Railway, 130 Mo. 152; Maxey v. Railroad, 20 S. W. Rep. (Mo.) 654.

To stand or walk on a railroad track or so near thereto as to be in the way of a passing train, will defeat a recovery for any injuries received therefrom. Brennan v. Railroad, 83 Fed. Rep. 124; Kreis v. Railway, 49 S. W. Rep. 878; Railroad v. Roberts, 37 S. W. Rep. 870. The supreme court of Georgia have declared: "If when he did leave the track, he made a mistake as to how near he might stand with safety to himself surely the railroad company should not be charged with the consequences of this mistake." Railroad v. Brinson, 19 Am. and Eng. Railroad Cases, 56, 52, 55; Pzolla v. Railroad, 19 Am. and Eng. Railroad Cases, 334-337; Bacon v. Railroad, 15 Am. and Eng. Railroad Cases, 412, 413; Railway v. Stroud, 31 Am. and Eng. Railroad Cases, 446, 447; Austin v. Railroad, 91 Ill. 38; Railroad v. Modglin, 85 Ill. 481-484; Moody v. Railroad, 68 Mo. 473, 474; Fletcher v. Railroad, 64 Mo. 488; Wharton's Law of Neg., sec. 384; Loring v. Railroad, 128 Mo. 349-360.

"When a vehicle and a railroad car are going side by side in the same direction, with a clear space of nearly two feet

between them, in case of a collision, the presumption of negligence is altogether against the driver of the cart, and not against that of the car, for the reason that the former can deviate from the track, while the latter can not." 1 Thomp. on Neg., 399—near bottom. "One person is not bound to anticipate that another person being *sui juris*, will negligently expose himself or his property to injury, and is not bound to make provision against the consequences of such negligence." 2 Thomp. on Neg. 1157—near top of page. "But he (the engineer) is not required to provide against contingencies which he reasonably has no grounds to believe would happen. He is not compelled to provide against the unexpected, the unusual, the extraordinary. * * * The facts are undisputed, and we think that the only inference that would be drawn from them by fair minded men is that the engineer acted as a prudent man should have acted under all the circumstances, and that he used the ordinary care to prevent the injury." Little v. Car. Cen. Co., 26 S. E. Rep. 110. Quite a thorough examination and consideration of the evidence has not convinced us that the plaintiff's injury was occasioned by the neglect of any duty which defendant owed her, but rather that such injury was the result of her own imprudence and heedlessness.

The judgment will accordingly be affirmed. All concur.