M. J. COVELL, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, December 4, 1899.

1. Negligence: CONTRIBUTORY NEGLIGENCE: JURY QUESTION. The question of contributory negligence is usually for the jury unless the facts are clear and indisputable and free from conflicts.

2. ———: ———: RAILROAD CROSSING: EVIDENCE: PHYSICAL FACTS. Where the physical facts and the lay of the ground clearly contradict plaintiff's evidence as to his looking and listening, they should govern, but otherwise the question is for the jury.

3. Evidence: WHISTLING AT CROSSING: ORDINANCE: CONTRIBUTORY NEGLIGENCE. The plaintiff, injured by a train at a street crossing, may testify that no whistle was sounded, though there was no ordinance or statute requiring whistling. It constitutes part of the *res gestae* and bears on the question of contributory negligence.

4. ———: SPEED OF TRAIN: EXPERT: RES GESTAE. A plaintiff who was injured at a crossing may testify to the speed of the train as a part of the *res gestae* without being an expert.

5. **Personal Injury**: MEASURE OF DAMAGES: ELEMENTS OF: INSTRUCTION. An instruction on the measure of damages properly mentioned the bodily pain and mental anguish, loss of time and expense, without giving to the jury license to add to these any so-called general damages.

6. ———: DAMAGES: EXCESSIVE. On the facts of this case a verdict for $2,000 is not excessive.

Appeal from the Jackson Circuit Court.—*Hon. E. L. Scarritt*, Judge.

AFFIRMED.

*Geo. S. Grover* for appellant.

(1) The court admitted incompetent evidence. Welsch v. Railroad, 72 Mo. 451; Field v. Railway, 76 Mo. 614; Muff v. Railroad, 22 Mo. App. 584; Madden v. Railroad, 50 Mo. App. 666; Guffey v. Railroad, 53 Mo. App. 462. (2) The demurrer to the evidence should have been sustained. Payne v. Railroad, 136 Mo. 652. (3) The instructions given by the court, at the plaintiff's request, were erroneous. Jacquin v. Railway, 57 Mo. App. 320. (4) The instructions asked by the defendant should have been given. Authorities cited *supra*. (5) The verdict is excessive. Authorities cited *supra*.

*John Burgin* for respondent filed a lengthy argument.

GILL, J.—Plaintiff sued defendant for personal injuries inflicted by defendant's employees in backing a train of freight cars over or against him at a point where defendant's tracks cross St. Louis avenue, a street in the west bottoms at Kansas City. On a trial by jury plaintiff had a verdict and judgment for $2,000 and defendant appealed.

On this appeal the main contention is that the court erred in not sustaining a demurrer to the evidence. It becomes

necessary then to briefly state the facts as they are disclosed by the evidence.

The collision occurred on St. Louis avenue (running east and west) near where the same crosses Mulberry street and about sixty to seventy-five feet east of the east line of the latter. At that point there were four railroad tracks running parallel and crossing St. Louis avenue at an oblique angle from northeast to southwest. These tracks covered about twenty-five feet of the street. The east one belonged to the Wabash road, while the other three were owned and used by the Missouri Pacific and Union Pacific roads. These tracks were used largely by these different roads for switching purposes and making up trains. In the vicinity there were several railroad yards—that of the Wabash being east of the point of accident, that of the Missouri Pacific being west, while others were in the same neighborhood.

The accident occurred at about 5 o'clock on the morning of March 19, 1898. According to the testimony of several witnesses the morning was dark, it had been raining the night before, and the condition of the atmosphere as to fog and smoke was such that one passing along there could not see further than a car's length. According to this testimony also there were no lights, nor watchman at the crossing of the streets or at the crossing of the railroad tracks. At about the hour named the plaintiff came along Mulberry street from the north, driving a one-horse milk wagon. When he came to St. Louis avenue he turned east on that street intending to go up town to deliver milk. He testified that when he got to the west of the four tracks he stopped, looked both ways and listened, but failed to see or hear any locomotive or cars approaching. He then proceeded, driving his wagon at a moderate walk and continually watching both ways for trains. However, just as his horse got upon the track of the Wabash road he suddenly discovered a freight car backing down upon him and running at a rapid rate of speed, estimated

by the plaintiff at fifteen to twenty miles an hour. · He struck and urged his horse forward, but was unable to pass entirely over before the train caught his wagon and threw plaintiff and his horse down under the side of the car, dragged him about two or three car lengths before it could be stopped and plaintiff was thereby severely injured.

At the time of the collision there was an ordinance in Kansas City prohibiting the running of railroad cars or locomotives on or across the streets at a greater rate of speed than six miles an hour; and also an ordinance requiring lighted lamps, lanterns or headlights to be conspicuously placed in front of the locomotives or cars, facing in the direction the same may be moving, whether running forward or backward, at all times between sunset and sunrise. The train in question, it seems, consisted of a switch engine and eleven or twelve cars. It was backing from northeast to southwest, and had no light at the west end as required by the ordinance. And besides the evidence for the plaintiff tended to prove that the train was being moved at a speed in excess of six miles an hour.

I. Assuming now the facts to be as the evidence in plaintiff's behalf tended to prove, it must be conceded that defendant's servants were negligent in handling the train. The testimony in fact makes a case of gross carelessness. These employees were shoving this long train of cars at a rapid and unlawful rate of speed, and through the dark, foggy and smoky morning, across one of the most used thoroughfares of the city, without any light and without any warning whatever. There is little if any dispute as to these facts. But defendant seeks to escape liability on the plea that however negligent the defendant's servants may have been, still the plaintiff was guilty of such contributory negligence as will bar his recovery.

After a careful review of the entire evidence we feel constrained to rule this point against the defendant. As often declared by the courts, the question of contributory negligence is usually one for the determination of the jury. It is only

when the facts are clear and indisputable that the court is authorized to declare, as matter of law, that plaintiff was negligent and can not recover. The settling of conflicts in the evidence rests, by the law of the land, with the jury, when the case is so tried, and not with the trial judge.

In this case now the testimony of the plaintiff shows, that before attempting to cross these four tracks he stopped, looked both ways and listened for approaching trains, that he neither saw nor heard any, and that then he proceeded on his way, at the same time watching for danger. He discovered nothing until he got upon defendant's track, when he saw the cars backing down at a rapid rate upon him not more than a car's length distant; and that he then made every reasonable effort to escape is clearly shown. That he did stop before attemping to pass over the tracks the plaintiff is also corroborated by one of defendant's witnesses.

But it is contended that the physical facts show that plaintiff did not observe these precautions, did not use his sense of vision, or else would have seen the approaching train in time to have avoided the collision. If the facts or premises, were without question as they are, claimed to exist, then the conclusion contended for would inevitably follow. For it is well settled that even though the plaintiff testifying that he did look and listen before entering upon the crossing, and discovered nothing endangering his passage, yet if the lay of the ground, the course and condition of the tracks and all the surroundings were such, that, looking and listening he must have seen or heard the train in time to have avoided injury, then, notwithstanding plaintiff's testimony the court is authorized to ignore such evidence and direct a verdict for the defendant. It will then be conclusively assumed either that he did not look or listen, or if he did, that he did not heed what he saw or heard. Lien v. Railway, this court but not yet reported, and cases cited. But this record fails to clearly establish the facts upon which this rule rests. It does not

appear by clear and undoubted proof that by the exercise of these proper precautions the plaintiff could have discovered the approach of the backing train in time to avoid injury. The evidence tends strongly to establish the contrary. As already stated, it tends to prove that because of the darkness and smoky, foggy condition of the atmosphere, the plaintiff could not see and detect the moving of the cars at a distance sufficient to escape collision with a train running at the speed and without lights and other warning, as was this one. According to the testimony even of one of defendants' witnesses it was so dark, foggy and smoky that without an artificial light he was unable to see a man beyond a few feet; and according to the witness Cook, whose testimony is so much relied on by defendant's counsel, he could only see the "dim outline" of the cars from a point of observation at the street corner nearby. It must be borne in mind too that by the preponderance of the evidence it appears that at this particular time the street lights were out, and that defendant had no lighted lamp, lantern or headlight on the end of the car as it was being rapidly pushed across St. Louis avenue. And with reference to plaintiff's ability to hear the train approaching, it is shown by the evidence, and is a matter of common knowledge, that in the west bottoms of Kansas City where the accident occurred there are numerous railroad yards and tracks where trains are continually moving and switching, thereby creating much rumbling noise and confusion. So that even if plaintiff could have seen, or did see "a dim outline" of a car, it would be difficult in the absence of a light or other warning to detect its movements or whether it be in motion at all. All these facts and circumstances which the evidence tended to establish were proper matters for the jury to consider when passing on the question as to whether or not the plaintiff acting as a prudent man could have avoided the collision. It is not the province of this court to ignore these circumstances, conditions of the darkness, fog and smoke testified to, and arbitrarily declare

that plaintiff could, if he had used his senses, have discovered the train moving down upon him in time to avert the jury. The same remarks are applicable to the testimony of the witness Cook.   We have no right to assume that his was the correct version of the affair, and that he alone gave the correct deversion of the affair, and that he alone gave the correct description of the character of the atmosphere, how dark it was and how far he could see the "dim outline" of an approaching train.   All these matters, were as they should have been, left to the jury.

In our opinion then the court properly refused to give a peremptory instruction for defendant.

II.   We proceed now to notice other matters complained of in defendant's brief:

It is said that the court erred in permitting witnesses to testify that no whistle was sounded as the train approached the crossing.   We think this was not error.   Conceding that the statute did not require the sounding of the whistle at or before the crossing was reached, still this evidence was proper on the issue of plaintiff's contributory negligence.   The same remark may also be made as to the testimony relating to the absence of a light at the street crossing.   As was said in Easley v. Railway, 113 Mo. 236: "The evidence referred to was relevant as part of the *res gestae*, and as having a bearing on the issue of plaintiff's alleged contributory negligence."   And so again the supreme court has said, in Schmitz v. Railway, 119 Mo. 256, that it was not error "in permitting the witness to testify that no flagman was present at the time of the accident, as this evidence was admissible as tending to show negligence on the part of the defendants and the want of care and caution in order to prevent accidents at this crossing."

It is claimed also that the court erred in allowing the plaintiff to testify in relation to the speed of the train as it approached the crossing.   This I suppose is on the theory that before such an opinion was given the witness should be shown

to be an expert, otherwise the evidence should have been rejected. The supreme court has also fully answered this objection. In Walsh v. Railway, 102 Mo. 582, the rule is said to be "that the rate of speed of moving cars may be shown by the opinion of a witness who saw the cars in motion. Such an objection no more involves a question of science than does an opinion concerning the speed of a horse. One who sees a moving train and possesses a knowledge of time and distance is competent to express an opinion as to the rate of speed at which the train is moving (citing authorities). The opinion of one who has never timed moving cars may not be as reliable as the opinion of one who has had such experience, but that goes to the weight and not to the competency of the evidence."

As to the court's instructions given, but one is complained of, and that relates to the measure of damages. We think the objections urged are without merit. The instruction does nothing more than call the jury's attention to the various elements of damage and which they are authorized to consider. It does not give the jury "a roving commission" to go into the realm of uncertainty. It does not direct the jury, as was done in the Jacquin case (57 Mo. App. 320), first to award such damages in "such sum as they believed from the evidence plaintiff had suffered," and in another and further instruction, or in any other way, authorize the jury to include in addition to such general damages other specific damages. In this case the jury was in effect told, that in estimating the damages they were to consider the several elements, of bodily pain and mental anguish already endured, and such as might with reasonable certainty be experienced in the future together with the loss of time and expenses incurred by plaintiff in consequence of the injury, etc. But there was no language used that would reasonably or probably lead the jury to suppose that these different elements were to be added to any so-called general damages. The instruction complained of is such as is usually given in the trial of such cases and

such as has been repeatedly approved by the courts, as will be seen by consulting the numerous decisions cited by plaintiff's counsel.

Neither is there any just ground to complain of the amount of damages awarded by the jury. If the evidence is to be credited, and of that the jury is the sole judge, the plaintiff was quite seriously injured. His injuries not only occasioned a present great bodily pain and mental suffering, loss of time and the like, but the evidence tended to prove that said injuries were to an extent permanent and such as to impair the plaintiff's ability to labor. When these injuries are considered we do not think a verdict for $2,000 at all excessive.

The case was fairly tried, the judgment is supported by abundant evidence and will be affirmed. All concur.