SAMUEL WHITE, Respondent, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, April 30, 1900.**

1. **Railroads: RULES: LIABILITY.** Railroads may make reasonable regulations governing the performance of their duties, and public interest requires that their trains should be run pursuant to said rules, and the company would be liable for personal injury resulting from neglect to observe such regulations.

2. ———: ———: **PLEADING: EVIDENCE.** The rules adopted by a railroad for the conduct of its business are admissible in evidence in actions for negligence though not pleaded, since they bear upon the conduct of the managers.

3. ———: **NEGLIGENCE: SIGNALS: SPEED OF TRAIN: EVIDENCE.** Evidence is reviewed and held sufficient to send the issue of negligence to the jury in failing to sound the whistle and running at an excessive rate through a deep-curved cut where a number of men and teams were and had been for sometime cleaning out the ditch on the side of the track.

4. ———: **PERSONAL INJURY: CONTRIBUTORY NEGLIGENCE: KEEPING OFF THE TRACK.** Evidence relating to the conduct of the plaintiff at the time he was struck by a train is reviewed and he is found guilty of contributory negligence, since, on receiving the warning of the approaching train, instead of taking one step off the track, he stood still and looked.

5. ———: CONTRIBUTORY NEGLIGENCE: STANDING ON TRACK. Knowingly to stand on a railroad track so as to be in the way of a passing train will defeat a recovery for injuries received thereby.

Appeal from the Macon Circuit Court.—*Hon. Nat M. Shelton,* Judge.

REVERSED.

*Gardiner Lathrop* and *Ben Eli Guthrie* for appellant.

(1) The evidence as to the absence of signals and the speed of the train was incompetent. Stillson v. Railroad, 67 Mo. 671; Powell v. Railroad, 76 Mo. 80. (2) The peremptory instruction to find for defendant at the close of the plaintiff's evidence, and again at the close of all the evidence, should have been given. There was a complete failure of proof of the allegations of negligence in the petition and the instructions given at the instance of defendant so explicitly declared. The contributory negligence of plaintiff, in voluntarily placing himself upon the ties in dangerous proximity to the train, where his work did not require him to be, and in failing to heed the warning given and step off the ties out of the way, and in looking in the wrong direction, was clearly proved. Skipton v. Railway, 82 Mo. App. 134; Lien v. Railway, 2 Mo. App. Rep. 445; Lenk v. Coal Co., 2 Mo. App. Rep. 589; Covell v. Railway, 2 Mo. App. Rep. 604; Moody v. Railroad, 68 Mo. 470; Turner v. Railroad, 74 Mo. 602; Powell v. Railway, 76 Mo. 80; Lenix v. Railway, 76 Mo. 86; Fletcher v. Railroad, 64 Mo. 484; Gorton v. Railway, 45 N. Y. 662; Austin Admnx. v. Railroad, 91 Ill. 35; Brennan v. Railroad, 83· Fed. Rep. 124; Kreis v. Railway, 131 Mo. 533; s. c. 49 S. W. Rep. 877; Burns v. Railroad, 101 Mass. 50; Maloy v. Railroad, 84 Mo. 270; Yancey v. Railway, 93 Mo. 433; Taylor v. Railway, 86 Mo.

457; Taylor v. Railroad, 83 Mo. 386; Dlauhi v. Railway, 105 Mo. 645; Maxey v. Railway, 113 Mo. 1; Boyd v. Railway, 105 Mo. 371; Barker v. Railway, 98.Mo. 50; Loring v. Railway, 128 Mo. 350; Aerkfetz v. Humphreys, 145 U. S. 418; Elliot v. Railroad, 150 U. S. 245; Gardner v. Railroad, 56 N. W. Rep. 603; Kelsay v. Railway, 129 Mo. 362; Lane v. Railway, 132 Mo. 4; Watson v. Railway, 133 Mo. 246; Allen v. Railroad, 19 Atl. Rep. 105.

*R. W. Barrow,* and *Dysart & Mithcell* for respondent.

(1) At places where trainmen have reason to apprehend that persons are likely to be on the track, as in a city, populous neighborhood, or place where people are accustomed to walk on the track, or where there is likelihood that the track will be obstructed from any cause, the trainmen must use caution, and care, both in running their trains at a reasonable speed and in giving signals and a failure to do so is negligence, even though the persons on the track be trespassers. Brown v. Railroad, 50 Mo. 461; Karle v. Railroad, 55 Mo. 476; Stepp v. Railroad, 85 Mo. 229; Chamberlain v. Railroad, 133 Mo. 587; 59 Mo. App. 151; Keenig v. Railroad, 19 Mo. App. 327; Powell v. Railroad, 59 Mo. App. 626; Duffy v. Railroad, 19 Mo. App. 380; Reilly v. Railroad, 94 Mo. 600; Williams v. Railroad, 96 Mo. 275; Frick v. Railroad, 75 Mo. 595, loc. cit., p. 610; Fiedler v. Railroad, 107 Mo. 645; LeMay v. Railroad, 105 Mo. 361; Guenther v. Railroad, 108 Mo. 18. (2) The rules of the railroad company are competent evidence as bearing on the question of negligence, under a general allegation of negligence, and need not be referred to in the pleadings at all. Riley v. Railroad, 18 Mo. App. 385; Logan v. Railroad, 77 Mo. 663; Alcorn v. Railroad, 108 Mo. 81, loc. cit., p. 92. (3) One is not chargeable with negligence because when exposed to sudden danger he does not adopt the best and safest course.

The question is whether he used reasonable care under all
the circumstances—a question of contributory negligence for
the jury.   Dickson v. Railroad, 124 Mo. 140; Siela v. Rail-
road, 82 Mo. 430, 438; Adams v. Railroad, 74 Mo. 553;
Siegrist v. Arnot, 86 Mo. 208; Tabler v. Railroad, 93 Mo.
79; Dimmitt v. Railroad, 40 Mo. App. 654; 14 Am. and Eng.
Ency. of Law [1 Ed.], p. 868.   (4)  The question as to
whether or not defendant was guilty of negligence and
whether plaintiff was guilty of contributory negligence were
both submitted to the jury.   These are questions of fact,
and the finding of the jury therein is binding, there being
substantial evidence to support it.   It is beyond the province
of the appellate court to disturb the findings of juries on
facts where they are supported by substantial evidence.
These propositions are so well settled, it is hardly worth
while to cite authorities. O'Mellia v. Railroad, 115 Mo. 205;
Huhn v. Railroad, 92 Mo. 440; Conroy v. Iron Works, 62
Mo. 35; Donahue v. Kansas City, 136 Mo. 657; Keenig v.
Railroad, 19 Mo. App. 327; Cook v. Railroad, 19 Mo. App.
329; Doyle v. Trust Co., 140 Mo. 1.

SMITH, P. J.—Action to recover damages for personal
injuries.   The facts which the evidence tends to establish
may be grouped in this wise.   The plaintiff with a span of
horses attached to a wheel scraper was at work under a con-
tractor in cleaning out and opening the ditches on the sides
of the defendant's track where it runs through a long, deep
and curved cut.   He had been thus engaged with others for
about a month previous to the time at which he was struck
and injured by one of the defendant's passing trains.   About
thirty feet west of where he was struck there was an over-
head bridge, the bents of which obstructed his view to the
west.   In cleaning out the ditches, the dirt was wheeled to
the east end of the cut and wasted in a pile on the side of

the track, and the men with wheelers then drove back empty for another load.    Just before being struck, plaintiff had wasted a load of dirt and, in returning, had driven about sixty feet west on the south side of the track and then crossed to the north side going further west.   While so driving on the north side, he ran over a clod or rock in the ditch they were cleaning out and it caused the wheeler pan to be tilted and the lever to become unhitched; he continued driving west until he came within about thirty feet of the overhead bridge, when he stopped, stepped off of the end of the ties on which he had been walking by the side of his wheeler, and latched his wheeler bar down.    Just as he stepped back on the end of the ties, one Byler, who was working in the same gang, came along with a snatch team and told him to look out, or get out of the way, that a train was coming.    Expecting the fast mail from the east at that time, he looked in that direction, when a train ran in from the west and struck him.    The distance between the ends of the ties and the side of the bank was some six or seven feet, giving abundance of room for wheelers and wagons to be driven without being in danger of being struck.    The men drove their wheelers either from behind or by the side, as they preferred.    The lines of some of the farmers at work there were not long enough to permit of their driving behind, but plaintiff testified that his were long enough and he could have driven so if he had desired, although his practice was to drive at the side.

There were about twenty or twenty-five men at work in the cut at the time, with some twelve or fifteen wheelers, two or three wagons, and two plows, with four horses to each plow.   No one else was injured besides the plaintiff.   He testified, on cross-examination, that he had to get down and get hold of the lever and bring it down and latch it, and if he had stood down in the ditch, he would have been off of the ends of the ties; that if he had stood behind his wheeler, he

would not have been hit; that after Byler had warned him, it was no time until he was struck. That when Byler came rushing up and said look out, he just stepped back on the ends of the ties and looked east; that he had time to look east, just threw his eyes east to see if the mail train was coming, and that almost at the same instant the train from the west struck him.

The plaintiff gave in evidence certain rules of the defendant, amongst which were the following, to-wit: "39 a. One long and one short blast of the whistle is the signal for approaching curves, tunnels, snow-sheds and other obscure places, thus (————— ————)." "215. Unless authorized by special order in each case, freight trains must not. exceed a speed of one mile in two minutes."

The uncontradicted evidence was to the effect that the train which struck the defendant was a freight train and that it was running at a very high rate of speed—perhaps, forty miles an hour—and that it gave no signal whatever in approaching the curve in which plaintiff was working. There was evidence introduced which tended to prove that at least during the time the plaintiff had been engaged at work in said cut that all of defendant's trains passing through it had slowed up.

The trial resulted in judgment for the plaintiff and the defendant appealed.

The defendant as a ground for the reversal of the judgment insists that the evidence relating to the speed of the train and its failure to give the signals required by its rule was incompetent under the pleadings and that the court therefore erred in admitting it. Turning to the petition, and it is found, in substance, to allege that while plaintiff was at work in said cut, driving his team along on the north side of defendant's railroad track about ten or twelve feet east of said overhead bridge, an engine and train of cars in

charge of defendant's employees approached from the west, running in a careless and negligent manner, and at a high, reckless and dangerous rate of speed, etc., in consequence of which the plaintiff was struck and hurt by it, etc.

Railway companies may make reasonable regulations as to the mode of the performance of their duties as carriers. And their duty to the public requires that they run their trains according to their rules and regulations. Logan v. Railway, 77 Mo. 663. Here, the defendant's regulations required trains on approaching curves, snow-sheds, tunnels and other obscure places to give certain signals. This undoubtedly was not only for the protection of its trains and the passengers and freight carried thereon, but for the protection of its trackmen and others authorized to be in any of such obscure places. The plaintiff was not a trespasser on defendant's track. He was rightfully there under the invitation and direction of the defendant's contractor who was engaged in opening the ditches in the sides of defendant's track. The contractor and those employed by him in carrying on the contract work were entitled to as much protection as if they had been trackmen. The safety of the men at work under the contractor required that the defendant's servants in charge of its trains approaching the curve should give the signals. It was the duty of defendant to make the cut, in which the contractor and his men were required to work, reasonably safe, regard being had for the nature of the work and the place where it was to be performed. Any neglect of this precaution on the part of the defendant for their safety in this regard, resulting in personal harm to any one of them, would constitute a tort for which there would be liability. And so an injury happening to any one of them by reason of the neglect of the defendant to give the required signal would impose liability. The evidence tended to prove that the rule in relation to the speed of freight

VOL. 84 app—27

trains was violated by the defendant in running the train which collided with plaintiff. These two rules, like an ordinance of a city, were admissible in evidence, though not pleaded, since the action was not based on them. They were only facts bearing upon the conduct of the managers of the train, and whether the defendant was guilty of negligence resulting in injury to plaintiff depended upon all the facts bearing upon their action. As said in Huy v. Railway, 66 Iowa 52, "the claim made by counsel for defendant, that it is necessary to plead rules of the company or any usage as to the manner of the performance of duty in order to authorize their introduction in evidence can not be sustained. These rules and usages are mere evidence bearing upon the question of negligence of the defendant or its employees," etc. And similar in effect are the following cases: Riley v. Railway, 18 Mo. App. 385; Judd v. Railway, 23 Mo. App. 56; Fusili v. Railway, 45 Mo. App. 535; Robertson v. Railway, 84 Mo. 121; Logan v. Railway, 77 Mo. 663; Alcorn v. Railway, 108 Mo. 81.

It can not be doubted but that the employees of the defendant managing the train which hurt the plaintiff knew that the contractor and his men were at work at the place where the plaintiff was hurt, and that they had every reason to expect that the latter, or some of them, were then on defendant's track, and that it was not therefore clear. And such former were aware of the danger to which the latter would be subjected by a reckless running of the defendant's train through the cut. It is thus made apparent that the defendant's trainmen managing the engine that struck plaintiff were under a very binding obligation to approach and run their train through the cut with that degree of care that was proportionate to the danger. If they had given the required signals, reduced the speed of their train and have been on the alert they would, it seems to us, have no more

than discharged their duty.   If there was a failure in this regard, then the defendant was guilty of negligence for which it was liable for any injury sustained in consequence thereof.   The authorities in this state we think go to this extent.   Frick v. Railway, 75 Mo. 595; Brown v. Railway, 50 Mo. 461; Karle v. Railway, 55 Mo. 476; Stepp v. Railway, 85 Mo. 229; Chamberlain v. Railway, 133 Mo. 587; 59 Mo. App. 151; Keenig v. Railway, 19 Mo. App. 327; Reilly v. Railway, 94 Mo. 600; Williams v. Railway, 96 Mo. 275; Powell v. Railway, 59 Mo. App. 626; Duffy v. Railway, 19 Mo. App. 380.   It seems to us that the evidence was sufficient to entitle the plaintiff to go to the jury, unless disentitled by reason of his own contributory negligence.

Even if the evidence does tend to show that the defendant was guilty of negligence, still was not the plaintiff guilty of such concurring negligence as to preclude his right of recovery?   As already stated, the plaintiff was driving his team attached to a wheeler scraper along the north side of the defendant's track when the wheeler bar got unlatched. He drove on a short distance, himself walking on the ends of the ties by the side of the wheeler, when he stopped his team, stepped north into the ditch, relatched the wheeler bar and, as he stepped back on the ends of the ties, Byler, who was behind him, came rushing around ahead of him with his scarry team and as he did so he exclaimed: "Look out, Sam, there is a train."   On receiving this warning, instead of promptly taking one step north into the space intervening between the track and the side of the cut, and thus getting out of the way of the approaching train, he stood still and looked to the east.   Although he had received the warning which had been customarily given when any one of the men there at work discovered the approach of a train, he chose not to heed the warning further than to stop and investigate for himself whether there was any occasion for the giving of

it. If, after receiving the warning, instead of stopping to look east for the train, he had stepped off the ends of the ties and then looked, he would not have been harmed. What would an ordinarily prudent man, having due regard for his own safety, have done under such circumstances? Would he not with alacrity have changed his position of peril to that of safety? It is not pretended that after he received the warning there was not sufficient time for him to have stepped from the end of the ties to a place of safety before the train reached the point where it struck him. Even if the train was running through the cut at a reckless rate of speed, and even though the defendant's employees in charge of the train were not, as they should have been, on the alert, still, if the plaintiff had heeded the warning—if he had taken the precaution that an ordinarily prudent man would have taken under the existing circumstances—if he had taken but a single step north, he would not have been injured. To knowingly stand on a railroad track so as to be in the way of a passing train will, under the authorities hereinafter cited, defeat a recovery for injuries thereby received. The plaintiff acted in utter disregard of the dictates of common prudence by needlessly remaining in a place of obvious peril after receiving a sufficient warning thereof. It is not contended that he was not in the possession of all his faculties, nor that he had not ample time and opportunity to escape the threatened peril after receiving the warning. The plaintiff's injury can not be solely imputed to the negligence of the defendant, but rather to the concurring negligence of both. The element of contributory negligence conspicuously pervades the plaintiff's entire case and must be held to preclude a recovery. Skipton v. Railway, 82 Mo. App. 134; Lecin v. Railway, — Mo. App. —; Lenk v. Coal Co., 80 Mo. App. 374; Covell v. Railway, 82 Mo. App. 180; Moody v. Railway, 68 Mo. 470; Powell v. Railway, 76 Mo.

80; Lenix v. Railway, 76 Mo. 86; Maloy v. Railway, 84 Mo. 275; McManamee v. Railway, 135 Mo. 440; and other cases cited in brief of defendant's counsel.

It follows that the action of the trial court in denying the defendant's demurrer to the evidence was error, for which we must reverse the judgment. *Ellison, J.*, concurs; *Gill, J.*, not sitting.